Louise M. HARRIS, Plaintiff–Counter–
Defendant–Appellee,

v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY, Defendant–
Counter–Claimant–Appellant,

Provident Companies, Inc.,
Defendant–Appellant.

Docket No. 01–9265.

United States Court of Appeals,
Second Circuit.

Argued: Aug. 28, 2002.

Decided: Oct. 29, 2002.

Arthur J. Siegel, Albany, NY, (Bond, Schoeneck & King, Albany, NY, of counsel), for Appellant Provident Life and Accident Ins. Co.

Jean F. Gerbini, Joel L. Hodes, Melvin H. Osterman, Heather D. Diddel, Whiteman Osterman & Hanna, Albany, NY, on the brief, for Appellee Louise M. Harris.

Before: MESKILL, CARDAMONE and STRAUB, Circuit Judges.

MESKILL, Circuit Judge.

Defendants-appellants Provident Life and Accident Insurance Co. and Provident Companies, Inc. (collectively "Provident") appeal from an order of the United States District Court for the Northern District of New York, Hurd, *J.*, granting plaintiff-appellee Louise M. Harris' (Harris) motion for summary judgment on the first count of the complaint, denying Provident's

cross-motion for summary judgment, and dismissing Provident's counterclaim. Harris has cross-appealed the district court's dismissal of the second count of the complaint. Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), Harris being a citizen of New York, each Provident entity being a Delaware corporation, and the claimed damages exceeding $75,000. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 as this is an appeal from a final judgment of the district court.

The first count of the complaint alleges that Provident breached its contract with Harris by refusing to pay her disability benefits pursuant to an insurance policy. The district court found that Harris was entitled to summary judgment on this claim, as she had established that no genuine issue of material fact existed as to whether she was totally disabled. The second count of the complaint alleges that Provident breached the implied covenant of good faith and fair dealing by refusing to pay Harris disability benefits. The district court found that Provident was entitled to summary judgment on this claim, because under New York law, a claim for breach of the implied covenant is duplicative of a breach of contract claim. Provident's counterclaim seeks rescission of the insurance contract based on an allegation that Harris withheld material information regarding her medical condition from Provident. The district court granted summary judgment on this claim to Harris and dismissed the counterclaim in its entirety.

We conclude that the district court erred in finding that no genuine issue of material fact exists as to whether Harris is totally disabled and entitled to disability payments under the insurance policy. We therefore vacate the district court's order granting summary judgment in favor of the plaintiff on the first count of the complaint and remand the case for further proceedings on that count only. We affirm the district court's order dismissing the second count of the complaint and dismissing Provident's counterclaim.

## BACKGROUND

Harris is a medical doctor, specifically, an anesthesiologist. As such, she was required to work long shifts. Her tasks were physically and mentally demanding. Because she worked in surgical procedures, Harris was required to use and was surrounded by latex products. At the time Harris claims to have become disabled, she was working approximately 60 hours per week and earning over $200,000 annually.

In 1992, while living and working in California, Harris entered into a disability insurance contract with Provident, whereby Harris would receive benefits if she became unable to work as an anesthesiologist. At the time Harris claims to have become disabled, the insurance policy provided benefits in the amount of $10,560 per month if Harris became "totally disabled." The insurance policy states that a covered person is "totally disabled" if she is "not able to perform the substantial and material duties of [her] occupation[ ] and [she is] receiving care by a Physician which is appropriate for the condition causing the disability." The policy further states that "occupation" means the occupation in which the covered person is engaged at the time she becomes disabled, including the person's specialty.

On or about March 16 and 17, 1998, Harris was working at Glens Falls Hospital as the staff anesthesiologist. During her shift, Harris worked primarily in the Obstetrics Department, but also went in and out of the Operating Room for various procedures. At that time, the Obstetrics Department was undergoing major con-

struction for latex abatement, which made the area very dusty. Harris began to feel ill and to have difficulty breathing. Harris continued to feel ill for several days, and on March 19, 1998 she was examined by Dr. Michael Slaughter, an allergist. Dr. Slaughter informed Harris that he believed she had asthma, which he believed could have been induced by an allergy to latex.

Between March 19, 1998 and May 4, 1998, Harris attempted to work as an anesthesiologist both at Glens Falls Hospital and at another area hospital, avoiding the construction area at Glens Falls. Throughout that time period, Harris avoided using latex gloves, and took medication to treat her symptoms. On May 4, 1998, Harris returned to Dr. Slaughter after having difficulty breathing at work. Dr. Slaughter advised Harris to stop working. Harris has not worked as an anesthesiologist since that date.

On or about May 16, 1998, Harris submitted a claim to Provident asserting, in a physician's statement prepared by Dr. Slaughter, that she had become unable to work due to "latex induced asthma, plus latex anaphylactoid reaction, plus latex contact reactivity, plus allergic rhinitis." Provident paid preliminary disability benefits to Harris for the period from May 4, 1998 through September 3, 1998, but informed Harris that she would have to provide proof of continuing disability on a monthly basis.

In September 1998, Dr. James DeMasi, an allergist and asthma specialist, evaluated Harris at Provident's request.[1] Dr. DeMasi testified at his deposition that he was retained by Provident to determine whether Harris had a latex allergy; he was not specifically asked to determine whether Harris had asthma, but the presence or absence of asthma was part of the evaluation because it may be a symptom of latex allergy. Dr. DeMasi found no evidence that Harris was allergic to latex, but suspected that Harris "may have some asthma." Dr. DeMasi also suspected that Harris had an anxiety disorder which included a perception of a latex allergy. Dr. DeMasi tested Harris' lung capacity, which was normal, and determined that whatever asthma Harris might have was triggered by dust or other irritants other than latex. On the basis of these findings, Provident denied Harris' application for benefits, notifying Harris of its decision by a letter she received on or about October 24, 1998. Harris appealed the denial to Provident's review board, which affirmed the decision to deny benefits on November 18, 1998, noting that Harris had not presented any new evidence that she was in fact totally disabled.

After receiving Dr. DeMasi's initial report, Harris wrote to Provident requesting that she be evaluated by one of four experts, including one from Johns Hopkins and one from the Mayo Clinic, whom she considered "[t]he most prominent names in the literature on latex allergy." Provident declined to have Harris evaluated by any of these experts.

On October 15, 1998, Harris visited Johns Hopkins on her own initiative and was evaluated by Dr. Franklin Adkinson. The tests performed by Dr. Adkinson did not support a finding that Harris was allergic to latex. Dr. Adkinson diagnosed Harris as having suffered an "acute pulmonary insult" as a result of the construction at Glens Falls Hospital. Dr. Adkinson's secondary diagnosis was asthma, and his

---

**1.** Dr. DeMasi testified at his deposition that he had not done any other medical review for Provident other than Harris', and that he had done approximately 6 such reviews for other companies in his career.

tertiary diagnosis was a possible latex allergy. Dr. Adkinson advised Harris orally at the time of his evaluation that he felt she could return to work and "see how she does." Dr. Adkinson produced a written report of his findings on January 5, 1999, which he sent to Harris and Dr. Slaughter. Harris did not inform Provident of the results of Dr. Adkinson's evaluation or disclose his report until required to do so by an order of the district court dated December 20, 2000.

On June 30, 1999, Harris went to the Mayo Clinic on her own initiative and was evaluated by Dr. Loren Hunt. Dr. Hunt found no evidence of latex sensitivity. Dr. Hunt also reported that Harris' treadmill testing, echocardiogram, pulmonary artery pressure and other tests were all normal. Dr. Hunt's report stated that Harris' "health appear[ed] to be quite good," and did not recommend that Harris take any medications. Dr. Hunt advised Harris that she could return to work at Glens Falls Hospital after construction there was completed. Harris did not inform Provident of the results of the Mayo Clinic evaluation until required to do so by an order of the district court dated December 20, 2000.

Harris initiated litigation against Provident in the United States District Court for the Northern District of New York on July 15, 1999, claiming that Provident had breached its contract with her by refusing to pay her disability benefits, and that Provident had also breached the covenant of good faith and fair dealing implicit in that contract. Provident filed a counterclaim contending that it was entitled to rescission of the insurance contract because Harris had failed to inform Provident of the results of her testing at Johns Hopkins and the Mayo Clinic in a timely manner. Harris moved for summary judgment on the breach of contract claim and on Provident's counterclaim. Provident moved for summary judgment on both counts of the complaint and on its counterclaim.

On December 14 and 15, 2000, after the commencement of the instant litigation, Harris was evaluated by Dr. Irwin Berlin of Trinitas Hospital. Dr. Berlin found no problems in Harris' cardio-pulmonary function, but concluded that Harris "had a positive latex (NRL) challenge." This report was made available to Provident during litigation.

In support of its opposition to Harris' motion for summary judgment, Provident submitted an expert report prepared by Dr. DeMasi, which reviewed and summarized the findings of the other doctors who evaluated Harris, as well as his own findings.[2] Dr. DeMasi concluded that "there is no objective medical evidence that Dr. Harris is disabled by asthma, allergic to latex, or unable to work in a hospital environment."

2. Harris contends that this report should have been stricken because Provident failed to disclose the basis for the report as required by Fed.R.Civ.P. 26(a)(2). Provident contends that it should be permitted to submit the supplemental report because Dr. DeMasi's original report focused on the question whether Harris suffered from a latex allergy. Once Harris shifted her claim from one of disabling latex allergy to one of disabling asthma, a shift which the district court followed, Provident contends it was entitled to submit a supplemental report addressing this new theory of the claim. The district court deemed the supplemental report admissible for purposes of the summary judgment motion, and we review that decision only for manifest error. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 65–67 (2d Cir.1997). No such error is present here. However, even if Dr. DeMasi's supplemental report is not admissible, there exist genuine issues of material fact sufficient to preclude summary judgment in favor of Harris.

The district court held that it was irrelevant whether Harris suffered from a latex allergy. The district court found that Harris had established that no genuine issue of material fact existed as to whether she was totally disabled from working as an anesthesiologist due to severe asthma, and that Harris therefore was entitled to judgment as a matter of law on the first count of her complaint. The district court dismissed Harris' second claim for breach of the implied covenant of good faith and fair dealing in a footnote, on the grounds that under New York law, such a claim is duplicative of a claim for breach of contract. Finally, the district court granted summary judgment in favor of Harris on Provident's counterclaim on the grounds that the information withheld by Harris was not material.

This appeal and cross-appeal followed.

## DISCUSSION

### I. Standard of Review

"As the analysis required for summary judgment is a legal one, we review *de novo* the district court's grant of summary judgment, construing the evidence in the light most favorable to the nonmoving party. Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (internal citations and quotation marks omitted). "[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88

S.Ct. 1575, 20 L.Ed.2d 569 (1968). In ruling on a motion for summary judgment, "the district court must view the evidence in the light most favorable to the party opposing summary judgment and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Gummo v. Village of Depew, N.Y.*, 75 F.3d 98, 107 (2d Cir.1996) (internal citations omitted).

### II. Harris' First Claim: Breach of Contract

■ The primary dispute in this case is whether Harris is entitled to payments under the disability insurance policy she had with Provident; in other words, is Harris "not able to perform the substantial and material duties of [her] occupation" as an anesthesiologist. As the moving party, Harris bears the burden of establishing that no genuine issue of material fact exists as to whether she is totally disabled under the policy; any ambiguity is to be resolved in favor of Provident. *See Carlton v. Mystic Transp.*, 202 F.3d 129, 133 (2d Cir.2000). Further, "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). Upon *de novo* review, we conclude that genuine issues of material fact exist as to whether Harris is totally disabled, and summary judgment on this claim in her favor should not have been granted.

In support of her motion for summary judgment, Harris submitted the opinions

of Dr. Slaughter, her treating allergist, and Dr. Desmond DelGiacco, her treating pulmonologist. Each of these doctors stated that it was his opinion that Harris was totally disabled due to latex-induced asthma and unable to work as an anesthesiologist. Harris also produced the report of Dr. Berlin, which concluded that Harris was allergic to latex.

In opposition to Harris' motion, Provident produced the medical evaluation of Dr. DeMasi, as well as the reports of the evaluations performed at Johns Hopkins and the Mayo Clinic. Each of these evaluations found no evidence that Harris was allergic to latex, and found Harris' pulmonary function to be normal. Dr. DeMasi, Dr. Adkinson and Dr. Hunt each found that Harris could return to work, at least after the construction at Glens Falls Hospital was completed.

This disagreement among the doctors who evaluated Harris gives rise to a genuine issue of material fact as to (1) what disability, if any, affects Harris, and (2) whether that disability totally disables her from working as an anesthesiologist. The district court erroneously stated that Provident relied solely on Dr. DeMasi's opinion in opposing summary judgment, and that because Dr. DeMasi made no finding as to whether Harris was disabled because of asthma, his opinion did not give rise to a genuine issue of material fact. "[W]here, as here, there are conflicting expert reports presented, courts are wary of granting summary judgment." *Hudson Riverkeeper Fund v. Atlantic Richfield Co.*, 138 F.Supp.2d 482, 488 (S.D.N.Y. 2001). *See also B.F. Goodrich v. Betkoski*, 99 F.3d 505, 527 (2d Cir.1996) (denying summary judgment where expert affidavit raised genuine issue of material fact); *Iacobelli Constr. v. County of Monroe*, 32 F.3d 19, 25–26 (2d Cir.1994) (same); *In re Joint E. & S. Dist. Asbestos Litig.*, 964 F.2d 92, 96 (2d Cir.1992) (same); *Jiminez v. Dreis & Krump Mfg. Co.*, 736 F.2d 51, 54 (2d Cir.1984) (same). Considering the Mayo Clinic and Johns Hopkins reports in conjunction with Dr. DeMasi's opinion, as is appropriate, and drawing all reasonable inferences in favor of Provident as the nonmoving party, we find that the district court erred in granting summary judgment in favor of Harris on this claim.

The district court focused solely on the issue whether Harris suffered from asthma, as opposed to *latex-induced* asthma. The original Notice of Claim filed by Harris with Provident includes a statement from Dr. Slaughter which repeatedly refers to Harris' disability as being related to latex. The form poses the following question: "What restrictions or limitations, if any, are there on your patient's ability to perform the duties of his/her occupation, and why?" In response, Dr. Slaughter wrote: "Patient has become hypersensitive to airborne concentrations of latex. The hospitals and medical facilities where she performs her duties are major repositories of latex antigens. The patient develops significant coughing, wheezing and [illegible] onset March 16–98, ceased work on our direction 5–5–98." Dr. Slaughter did not mention asthma as a reason for Harris' inability to work in the claim form. Thus, when Harris applied for benefits, she applied on the grounds that she was allergic to latex and therefore unable to work in the latex-intensive environment of a hospital. Provident evaluated Harris' claim for benefits accordingly. Provident's expert determined that Harris was not allergic to latex, and Harris' own physician could not state unequivocally that Harris was allergic to latex. Harris' claim was therefore denied.

There is ample evidence in the record to raise a genuine issue of material fact as to whether Harris is severely allergic to la-

tex. There is also sufficient evidence to raise a genuine issue of fact as to whether Harris is totally disabled by asthma. Although Dr. DeMasi, Johns Hopkins and the Mayo Clinic evaluated Harris primarily for latex sensitivity, each also performed testing on Harris' pulmonary functioning, as asthma is often a symptom of latex sensitivity, and Harris had specifically complained of breathing difficulty. Each of these evaluations found Harris to be in good pulmonary health. Dr. DeMasi and Johns Hopkins found that it was possible that Harris did suffer from some asthma; however, none of these three experts found that Harris suffered from severe or debilitating asthma, and each recommended she return to work. The district court's order granting summary judgment on this claim is therefore vacated, and this case is remanded for further proceedings on Harris' breach of contract claim.

### III. Harris' Second Claim: Breach of the Implied Covenant of Good Faith and Fair Dealing

■ The second count of Harris' complaint alleges that Provident breached the covenant of good faith and fair dealing implied in the disability insurance contract between Harris and Provident. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992) (internal quotation marks and citations omitted). The district court found that Harris' claim for breach of the implied covenant was therefore duplicative of her claim for breach of contract, and dismissed

the implied covenant claim accordingly. *See ICD Holdings S.A. v. Frankel*, 976 F.Supp. 234, 243–44 (S.D.N.Y.1997) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.") (internal quotation marks omitted).

Harris has appealed the dismissal of this claim on two grounds. First, Harris points to a series of New York cases holding that, under certain circumstances, an insurer may be held liable by an insured or the insured's excess insurer for a bad faith failure to settle a claim. In *Pavia v. State Farm Mutual Automobile Ins. Co.*, 82 N.Y.2d 445, 453–54, 626 N.E.2d 24, 27–28, 605 N.Y.S.2d 208, 211–12 (1993), the court held that a plaintiff in such a case "must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would he held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted." *See also Geler v. Nat'l Westminster Bank USA*, 770 F.Supp. 210, 215 n. 1 (S.D.N.Y.1991) (noting that a cause of action exists in New York for "bad-faith failure to settle an insurance claim"). These cases are inapposite, as the bad faith claim they recognize is limited to cases in which an insurance company refuses to settle a claim *against the insured*, thereby exposing the insured or its excess insurer to unreasonable or unnecessary liability. Here, there is no claim against Harris; rather, Harris herself is the claimant.[3]

---

**3.** Harris also argues that under *Acquista v. New York Life Ins. Co.*, 730 N.Y.S.2d 272, 285 A.D.2d 73 (App. Div. 1st Dep't 2001), consequential damages are available for an insurer's bad faith denial of coverage. Even as-

suming *Acquista's* holding is correct, *see Brown v. Paul Revere Life Ins. Co.*, 2001 WL 1230528, at *5 (S.D.N.Y. Oct.16, 2001) (calling *Acquista* inconsistent with New York law), Harris' complaint does not adequately plead a

■ Harris also contends that "an appropriate conflict-of-laws analysis counsels the application of California law to this claim," and that under California law, breach of the implied covenant by an insurer may form the basis of a separate cause of action, distinct from a claim for breach of the contract itself. The insurance contract was signed in 1992 in California where she lived and worked at the time. Therefore, we must conduct a choice of law inquiry.

Because our subject matter jurisdiction here is grounded on the diversity statute, and because the District Court whose judgment we are reviewing sits in New York, we must determine the body of substantive law that applies here with reference to New York's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under these rules, the first step in any choice of law inquiry is to determine whether there is an "actual conflict" between the laws invoked by the parties. *See In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905, 613 N.E.2d 936 (1993). If there is such a conflict, the court must then classify the conflicting laws by subject matter with reference to New York law. *See, e.g., Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 54, 687 N.Y.S.2d 604, 606, 710 N.E.2d 250 (1999) (explaining that New York law determines whether, for choice of law purposes, a Connecticut statute of limitations is "substantive" or "procedural"); *see also, e.g., Martin v. Julius Dierck Equip. Co.*, 52 A.D.2d 463, 466–67, 384 N.Y.S.2d 479, 482 (2d Dept.1976) (classifying a products-liability claim as sound-

ing in tort, not contract). Having classified the conflicting laws, the court must then select and apply the proper body of choice of law rules.

*Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419–20 (2d Cir.2001). New York law, as discussed above, does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled. Under California law, it is also normally the case that

> [i]f the allegations [of breach of the implied covenant] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.

*Careau & Co. v. Sec. Pac. Bus. Credit*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387, 400 (1990). However, in California, unlike in New York, "[i]n insurance cases there is a well-developed history recognizing a tort remedy for a breach of the implied covenant" where the insurer has acted "unreasonably or without proper cause." *Id.* (internal citations omitted). Thus, there is an actual conflict between the law of New York and the law of California. However, we need not determine which law applies, because under the law of either state, the district court was correct in dismissing the plaintiff's claim.

■ The Ninth Circuit has recently explained California law as follows:

basis for the recovery of consequential damages. *See Kenford Co. v. County of Erie,* 73 N.Y.2d 312, 319, 537 N.E.2d 176, 178, 540 N.Y.S.2d 1, 3–4 (1989) (to recover damages beyond those flowing naturally from the

breach, "such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting").

In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable. Under California law, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage[.] A court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed *a genuine issue as to the insurer's liability.*

*Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir.2001) (internal citations and quotation marks omitted).

When Harris filed her notice of claim with Provident in May 1998, the attached "Attending Physician's Statement," completed by Dr. Slaughter, identified the conditions suffered by Harris as "latex induced asthma, plus latex anaphylactoid reaction, plus latex contact reactivity, plus allergic rhinitis." On the same form, Dr. Slaughter indicated that the reason that Harris was unable to work was that she had "become hypersensitive to airborne concentrations of latex." Based on Dr. Slaughter's diagnosis, Provident made an initial payment under the policy to Harris for benefits from May 4, 1998 through September 3, 1998. In September 1998, Provident hired Dr. DeMasi to evaluate Harris for the condition which she had claimed rendered her unable to work: hypersensitivity to latex. Dr. DeMasi found that Harris was not allergic to latex. Based on this finding, Provident determined that it would not pay Harris any further benefits under the policy. Harris appealed this decision, and Provident's review board upheld the decision to deny

benefits, based on Harris' failure to present any new medical evidence that would cause Provident to change its position.

■ "[T]he reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of subsequent events which may provide evidence of the insurer's errors." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 347, 108 Cal.Rptr.2d 776, 784 (2001). At the time Provident made its initial decision to deny coverage, in October 1998, and its decision to deny Harris' appeal of the denial, in November 1998, Provident had only Dr. DeMasi's report, Dr. Slaughter's diagnosis, and Harris' own statements on which to base its decisions. Harris also was evaluated by Johns Hopkins in October 1998, but she did not disclose that fact to Provident until months after Provident had reached its decision. As Dr. DeMasi noted, even Dr. Slaughter's diagnosis was equivocal, using terms such as "I believe" and "I suspect" that Harris had a latex allergy, and Dr. Slaughter's own initial testing left him unable to confirm that Harris was actually allergic to latex.

■ A California appellate court has recently held that

[i]n a bad faith case, the primary test is whether the insurer withheld payment of an insured's claim unreasonably and in bad faith. Where benefits are withheld for proper cause, there is no breach of the implied covenant.... A court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability. The "genuine dispute" doctrine may be applied where the insurer denies a claim based on the opinions of experts.

*Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1292, 97 Cal.Rptr.2d 386, 391 (2000) (internal citations and quotation marks omitted). Further, the existence of a significant disagreement between the insurer's expert and the insured's expert does not render the insurer's decision to rely on its expert's opinion unreasonable. *See id.* at 1292–93, 97 Cal.Rptr.2d 386. Provident relied on Dr. DeMasi's expert opinion, which was supported by medical testing, and not contradicted by any conclusive evidence. In light of the information available to Provident at the time it made its decision, it was not unreasonable for Provident to deny her claim and discontinue payments to her. Harris did not produce any evidence that would create a genuine issue of material fact as to the reasonableness of Provident's decision, and Provident therefore was entitled to summary judgment on this claim even under California law. Because this claim was properly dismissed under either New York law or California law, we affirm the district court's dismissal of this claim.

IV. *Provident's Counterclaim for Rescission*

■ Provident contends that the district court erred in dismissing its counterclaim for rescission of the insurance contract. Provident asserts that Harris withheld material information from it, specifically, the results of her tests by Johns Hopkins and the Mayo Clinic. Harris does not dispute that she failed to disclose these reports. However, Provident is not entitled to rescission as a result of Harris' failure to disclose, for several reasons.

First, as Harris correctly asserts in her brief, Provident had already made its decision to deny benefits to Harris before Harris had access to the reports from either Johns Hopkins or the Mayo Clinic, and therefore any nondisclosure of these reports by Harris could not possibly have affected Provident's decision. Provident made its decision to deny Harris benefits in October 1998. Harris was initially evaluated at Johns Hopkins on October 15, 1998; she received the report of this evaluation in January 1999. Harris returned to Johns Hopkins for additional testing in May 1999. Harris visited the Mayo Clinic only once, in June 1999.

Second, on October 15, 1998, Dr. Adkinson of Johns Hopkins orally advised Harris that he believed it would be safe for her to return to work. Harris received notice on October 24, 1998 that Provident had decided to deny benefits to her. The record shows that Provident employees met on October 13, 1998 to discuss and possibly make a decision on Harris' claim. Thus, it is likely that Provident made its decision before Harris even visited Johns Hopkins.

Third, the reports from Johns Hopkins and the Mayo Clinic support Provident's decision to deny benefits. Provident does not contend that it would have made a different decision had it been aware of the results of these evaluations. Therefore, any nondisclosure by Harris was immaterial because it did not affect the outcome of Provident's decision.

Provident contends that Harris had a continuing obligation to disclose information relevant to her condition, even after her claim for benefits had been denied. In support of its position, Provident cites a series of cases stating that nondisclosure is grounds for rescission of an insurance contract. The cases relied on by Provident (and by Harris) involve misrepresentations made in applications for insurance coverage, as opposed to demands for benefits under an existing policy, but the rationale applied in those cases applies equally here: if the misrepresentation does not affect the outcome of the insurer's decision, it is not material. *See Jackson v. Travelers Ins.*

84

*Co.*, 113 F.3d 367, 371 (2d Cir.1997) (upholding summary judgment in favor of insurer where insured misrepresented material facts related to his medical history on his application for insurance, and holding that "[i]f a fact is material to the risk, the insurer may avoid liability under a policy if that fact was misrepresented in an application for that policy"); *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 184 (2d Cir.1984) ("False sworn answers are material if they might have affected the attitude and action of the insurer."). Once the decision had been made to deny benefits to Harris, any failure by Harris to disclose new information regarding her condition was immaterial, because it could not possibly affect Provident's decision. Accordingly, the district court did not err in dismissing Provident's counterclaim.

## CONCLUSION

We conclude that genuine issues of material fact exist as to whether Harris is permanently disabled from working as an anesthesiologist. Therefore, we vacate the district court's grant of summary judgment as to the plaintiff's breach of contract claim and remand this case for further proceedings as to that claim only. We affirm the district court's dismissal of the plaintiff's claim for breach of the implied covenant of good faith and fair dealing, as well as the dismissal of Provident's counterclaim.

Each party shall bear its own costs on this appeal.