■ Nɪʀ Rᴏɴᴇɴ et al., Appellants, v Uʀɪᴇʟ Cᴏʜᴇɴ et al., Respondents. Uʀɪ Mɪʀᴏɴ, Intervenor-Appellant. [5 NYS3d 404]—

Order, Supreme Court, New York County (Marcy S. Friedman, J.), entered August 28, 2014, which denied appellant Uri Miron's motion to intervene, and denied without prejudice plaintiffs' motion to enforce a settlement agreement, unanimously modified, on the law, to grant Miron's motion, and order a hearing on the matters raised therein, and to grant plaintiffs' motion to the extent of ordering a hearing on (1) whether defendants paid $21,940 to Ronen, (2) plaintiffs' damages from defendants' failures to turn over the Bullseye intellectual property (IP) in its entirety on the effective date, divide the physical assets of the Bullseye entities within four weeks from the execution date, and relinquish all right, title, and interest in the name "Bullseye" to Ronen, and (3) plaintiffs' claims that equipment was missing, incorrect, damaged, etc., and otherwise affirmed, without costs.

The motion court found, sua sponte, that it lacked jurisdiction over the escrow agreement. However, the escrow agreement was an exhibit to the settlement agreement over which the court retained jurisdiction. In addition, at least two terms in the settlement agreement were defined by reference to the escrow agreement, and the settlement agreement and the escrow agreement were executed at or around the same time as part of a single transaction (execution of the settlement agreement). Accordingly, the court had jurisdiction over the escrow agreement.

Defendants did not preserve their argument that Miron failed to submit a proposed pleading as required by CPLR 1014. Were we to consider this unpreserved argument, we would find that, under the circumstances, a proposed pleading was not required (see Ryder v Travelers Ins. Co., 37 AD2d 797 [4th Dept 1971]).

The court found that the dispute between Miron and defend-

ants under the escrow agreement was completely separate and distinct from the dispute between plaintiffs and defendants under the settlement agreement. However, the dispute between Miron and defendants is about certain algorithms, and the dispute between plaintiffs and defendants also includes algorithms. Thus, there is a common question of fact (see CPLR 1013).

Since there is a factual dispute as to whether Miron turned over an up-to-date version of the intellectual property described in exhibit C to the escrow agreement, we remand for a hearing (see 288/98 W. End Tenants Corp. v Mosesson, 144 AD2d 305 [1st Dept 1988]; see also Teitelbaum Holdings v Gold, 48 NY2d 51, 56 and n 2 [1979]).

The motion court properly denied that portion of plaintiffs' motion that is based on the claim that defendants violated the settlement agreement by employing four named employees because those employees are not employed by a defendant. However, it should have held a hearing on the remaining issues including whether defendants failed to pay Ronen $21,940 as they were required to under the settlement agreement since there is an issue of fact as to whether or not the payment was made raised by the affidavits submitted by the parties.

Second, the settlement agreement states, "A copy of the Bullseye IP shall be transferred *in its entirety* to Ronen *on the Effective Date*" (emphasis added). It is undisputed that the Bullseye IP was not transferred in its entirety to Ronen on October 26, 2013. However, there is an issue of fact as to whether the delay was caused, in part, by plaintiffs and whether plaintiffs were damaged by defendants' failure to transfer the Bullseye IP in its entirety on October 26, 2013.

It is undisputed that defendants failed to turn over trading algorithms and source code developed by nonparty Avi Kohn (an employee of one of the defendants, as defendants admitted in their verified answer). Again, however, a hearing is required to determine if plaintiffs were damaged by defendants' failure to turn over this information and, if so, in what amount.

Contrary to the motion court's finding, Ronen's allegations that he failed to receive a complete copy of the Bullseye IP were not "wholly conclusory."

Although, as the motion court pointed out, the settlement agreement did not specify any remedy for breaches, a settlement agreement is a contract, and "in actions for breach of contract, the nonbreaching party may recover general damages which are the natural and probable consequences of the breach" (Kenford Co. v County of Erie, 73 NY2d 312, 319 [1989]). De-

fendants, high-speed securities traders who use algorithms, should have foreseen that plaintiffs would be damaged if they did not receive all of the algorithms necessary for trading.

There are also factual issues regarding the computer equipment requiring a hearing. According to the settlement agreement, the physical assets of the Bullseye Entities were to have been divided between Ronen and Cohn within four weeks from the execution date of the agreement, i.e., by November 14, 2013. It is undisputed that defendants did not timely ship the equipment and plaintiffs claim that some of the equipment was not sent at all, and that some of it was received damaged and/or missing components, operating systems and software. There are issues of fact regarding the condition of the equipment and the damages suffered by plaintiff due to defendants' failure to ship it in a timely manner.

The fourth issue that requires a hearing is defendants' failure to relinquish the Bullseye domain name as required by the settlement agreement which states that defendant Uriel Cohen's election to assume exclusive ownership of Bullseye Central, Ltd. shall not become effective unless he relinquishes all right, title, and interest in the Bullseye name to Ronen. Cohen elected to assume exclusive ownership of Bullseye Central, Ltd. but he did not relinquish the domain name. Even if defendants took down the Bullseye website, that is not the same as relinquishing all right, title, and interest in the Bullseye name to Ronen. Moreover, Ronen submitted an affidavit saying that taking down the website resulted in an interruption that impaired the value of the domain and the Bullseye brand. Concur—Gonzalez, P.J., Tom, Richter, Manzanet-Daniels and Kapnick, JJ.