Mil-Spec Indus. Corp. v Expansion Indus., LLC (2022 NY Slip Op 00035)





Mil-Spec Indus. Corp. v Expansion Indus., LLC


2022 NY Slip Op 00035


Decided on January 5, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 5, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
ROBERT J. MILLER
PAUL WOOTEN
JOSEPH A. ZAYAS, JJ.


2019-11939
 (Index No. 604712/15)

[*1]Mil-Spec Industries Corp., appellant,
v
Expansion Industries, LLC, et al., respondents, et al., defendants.


Nicholas J. Damadeo, P.C., Huntington, NY, for appellant.
Ketover & Associates, LLC, Garden City, NY (Joshua S. Ketover of counsel), for respondents.



DECISION & ORDER
In an action, inter alia, to recover damages for slander, the plaintiff/counterclaim defendant appeals from a judgment of the Supreme Court, Nassau County (Julianne T. Capetola, J.), entered October 16, 2019. The judgment, upon a decision of the same court dated August 25, 2019, made after a nonjury trial, is in favor of the defendant/counterclaim plaintiff Expansion Industries, LLC, and against the plaintiff/counterclaim defendant in the principal sum of $2,905,728.75, and in favor of the defendant/counterclaim plaintiff CSC Leasing Co. and against the plaintiff/counterclaim defendant in the principal sum of $104,618.25.
ORDERED that the judgment is affirmed, with costs.
In 2015, the plaintiff sold three used Ammo Load Mark III machines, which are used in the manufacture of ammunition, to the defendant Expansion Industries, LLC (hereinafter Expansion), an ammunition manufacturing company, for the total sum of $92,997. Expansion obtained financing to pay for the machines from the defendant CSC Leasing Co. (hereinafter CSC). According to a purchase order dated May 12, 2015, CSC paid for the machines in full prior to the plaintiff delivering them to Expansion. CSC then leased the machines to Expansion.
The purchase of the machines from the plaintiff was memorialized in a five-page "Proforma Invoice" (hereinafter invoice), dated May 8, 2015, prepared by the plaintiff and addressed to Expansion. The invoice described one of the machines as a "[v]ery nice machine, not even broke in from Factory NEW." The invoice described another machine as being in "excellent condition with nominal wear," and in "near new condition, machine isn't even broken in yet." The third machine was described in the invoice as having "full upgrades." Expansion's owner, the defendant Richard A. Smissen, signed each page of the invoice as confirmation of the purchase. A representative of the plaintiff, August Kim, signed the last page of the invoice.
After the machines were delivered to Expansion's facility in Virginia, Smissen sent an email on July 1, 2015, to the plaintiff's president and CEO, Ron Naane, expressing concern that the machines did not conform to the descriptions set forth in the invoice since the machines were missing many parts. Smissen followed up with a second email a few hours later that day [*2]enumerating numerous problems with the machines and expressing the intent to return them. Thereafter, the plaintiff engaged the services of a machinist, who was located in Virginia, to go to Expansion's facility for the purpose of inspecting the machines. The machinist appeared at Expansion's facility approximately a week after the machines had been delivered. A disagreement arose between Smissen and the machinist over the conditions under which the machinist's inspection would take place, and the machinist left Expansion's facility without conducting the inspection.
Approximately three weeks after delivery of the machines, the plaintiff commenced this action, inter alia, to recover damages for slander. Expansion and Smissen's answer to the amended complaint, and CSC's separate answer, included counterclaims to recover damages for breach of express and implied warranties.
The plaintiff moved, among other things, for summary judgment dismissing the counterclaims. Expansion, Smissen, and CSC (hereinafter collectively the defendants) moved for summary judgment dismissing the amended complaint insofar as asserted against them. In an order dated May 25, 2018, the Supreme Court, inter alia, granted the defendants' motion and denied the plaintiff's motion.
On April 29, 2019, a three-day nonjury trial was commenced on the counterclaims. During the trial, the defendants presented testimony from three witnesses, Smissen, CSC's vice president of operations, and an expert in the fields of shooting, firearms, and the production of ammunition, who performed an inspection of the subject machines. The plaintiff presented the testimony of Naane.
In its decision after trial, the Supreme Court found, inter alia, that the defendants demonstrated that the plaintiff had breached express and implied warranties by showing that the machines which were delivered to Expansion did not conform to the descriptions set forth in the invoice. The court determined that Expansion was entitled to damages in the principal sum of $53,298.75 for breach of express and implied warranties, representing the amount of lease payments it made on the machines, as well as damages in the principal sum of $2,852,430 for lost profits resulting from that breach. The court determined that CSC was entitled to damages in the principal sum of $104,618.25 for breach of express and implied warranties. On October 16, 2019, the court entered judgment in favor of Expansion and against the plaintiff in the principal sum of $2,905,728.75, and in favor of CSC and against the plaintiff in the principal sum of $104,618.25. The plaintiff appeals.
"Where, as here, a case is tried without a jury, this Court's authority 'is as broad as that of the trial court,' and this Court 'may render the judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses' and hearing the testimony" (Carone v St. George Theater Restoration, Inc., 187 AD3d 1128, 1129, quoting Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499; see West St. Props., LLC v American States Ins. Co., 150 AD3d 792, 794). "Where the trial court's findings of fact rest in large measure on considerations relating to the credibility of witnesses, deference is owed to the trial court's credibility determinations" (Bennett v Atomic Prods. Corp., 132 AD3d 928, 930; see Reingold v Bowins, 180 AD3d 722, 723).
Here, contrary to the plaintiff's contention, the evidence established that Expansion rejected the machines with particularity as required by UCC 2-605. Smissen's second email to Naane detailed numerous problems with the machines, including, inter alia, that one of the machines was "locked up," another had "sparks coming out of the motor," and the third would "not turn on." Smissen also asserted that the machines had not been refurbished as promised, and noted that Naane had admitted that he had not inspected the machines before they were shipped to Expansion.
Further, while Expansion's rejection triggered the plaintiff's right pursuant to UCC 2-A-513 to cure the alleged nonconformity, the Supreme Court's determination that the plaintiff failed to do so was warranted by the facts. The court credited Smissen's testimony that the only action the plaintiff took in response to the rejection of the machines was to send the machinist, who, [*3]upon arrival at Expansion's facility, refused to provide his full name or phone number and demanded exclusive and unaccompanied access to Expansion's facility during the inspection. The plaintiff did not submit any evidence to the contrary to demonstrate that it offered to cure the nonconforming tender by repairing or replacing the machines. The machinist's visit did not constitute a valid offer to cure because of the unreasonable demands he made before he would inspect the machines. Further, the plaintiff was not entitled to additional time beyond the time for performance to substitute a conforming tender pursuant to UCC 2-A-513(2), because it did not have reasonable grounds to believe that the nonconforming tender would be acceptable.
The Supreme Court did not err in awarding Expansion damages for future lost profits. A buyer may recover consequential damages resulting from a seller's breach (see id. § 2-715[2]). Consequential damages can include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise" (id. § 2-715[2][a]). "To determine whether consequential damages were reasonably contemplated by the parties, 'the nature, purpose and particular circumstances of the contract known by the parties should be considered, as well as what liability [the seller] fairly may be supposed to have assumed consciously, or to have warranted [the buyer] reasonably to suppose that it assumed, when the contract was made'" (Janusonis v Carauskas, 137 AD3d 1218, 1220, quoting Kenford Co. v County of Erie, 73 NY2d 312, 319).
"A party may not recover damages for lost profits unless they were within the contemplation of the parties at the time the contract was entered into and are capable of measurement with reasonable certainty. The rule that damages must be within the contemplation of the parties is a rule of foreseeability. The party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made" (Ashland Mgt. v Janien, 82 NY2d 395, 403; see Inspectronic Corp. v Gottlieb Skanska, Inc., 135 AD3d 707, 708). Here, contrary to the plaintiff's contention, the determination that, at the time the parties entered into the contract, damages for lost profits were within the contemplation of the parties is warranted by the facts. It was foreseeable that a breach on the part of the plaintiff with respect to delivering functioning machines would result in Expansion being unable to manufacture sufficient ammunition to fill existing orders, or to accept new orders, culminating in lost profits (see Ashland Mgt. v Janien, 82 NY2d at 403; Inspectronic Corp. v Gottlieb Skanska, Inc., 135 AD3d at 708-709).
The requirement that damages be "reasonably certain . . . does not require absolute certainty. Damages resulting from the loss of future profits are often an approximation. The law does not require that they be determined with mathematical precision. It requires only that damages be capable of measurement based upon known reliable factors without undue speculation" (Ashland Mgt. v Janien, 82 NY2d at 403). Here, the evidence and the credible testimony adduced at trial of Smissen and the defendants' expert witness, Richard Garnand, demonstrated that the amount of Expansion's future profits was capable of measurement, without the need for speculation (see Inspectronic Corp. v Gottlieb Skanska, Inc., 135 AD3d at 709; Family Operating Corp. v Young Cab Corp., 129 AD3d 1016, 1017-1018). Smissen testified that the subject machines could produce more ammunition than the machines that Expansion had been using, as well as produce more profitable .357 caliber ammunition, which the machines Expansion already owned could not produce. He also testified as to Expansion's revenue at the time Expansion ordered the subject machines, and the profit it made on each round of ammunition manufactured using the machines it already owned taking into account the cost of materials and overhead. Further, Garnand testified as to the amount of ammunition that the subject machines could produce if the new machines had been in the condition described in the invoice and running properly, and the market value of the ammunition. He also testified that, based on his experience, Expansion would have been able to sell all of the ammunition produced by each machine. Moreover, the Supreme Court's determination that it was not reasonable for Expansion to cover or mitigate its damages by procuring new machines to replace the subject machines, because Expansion was not able to do so as a result of its financial condition, which was attributable in part to the plaintiff's breach, was warranted by the facts (see Val Tech Holdings, Inc. v Wilson Manifolds, Inc., 119 AD3d 1327, 1330). Further, "the rule concerning cover makes it permissive (see UCC 2-712[1]) and not mandatory (see UCC 2-712[3])" and, as a result, a buyer's failure to obtain similar goods "does not bar its right to recover lost profits and other [*4]consequential damages (see UCC 2-713, 2-715)" (Hudson Feather & Down Prods., Inc. v Lancer Clothing Corp., 128 AD2d 674, 675).
In addition, contrary to the plaintiff's contention, the Supreme Court's finding that CSC had standing to recover against the plaintiff for breach of warranties is warranted by the facts. UCC 2-A-209(1) provides that "[t]he benefit of a supplier's promises to the lessor under the supply contract and of all warranties, whether express or implied, including those of any third party provided in connection with or as part of the supply contract, extends to the lessee to the extent of the lessee's leasehold interest under a finance lease related to the supply contract, but is subject to the terms of the warranty and of the supply contract and all defenses or claims arising therefrom." UCC 2-A-209(2) provides, in part, that "the extension of the benefit of a supplier's promises and of warranties to the lessee under subsection (1) does not . . . [m]odify the rights and obligations of the parties to the supply contract, whether arising therefrom or otherwise."
Here, the purchase order for the subject machines was signed by CSC's Orders/Lease Administrator and was addressed to the plaintiff. The purchase order, which indicated that all correspondence relating to billing should be sent to CSC, stated that it covered "equipment description & pricing per" the invoice. The invoice, which was attached to the purchase order, was prepared by the plaintiff and signed by representatives of the plaintiff and Expansion. Consequently, a contract existed between the plaintiff and CSC, pursuant to which both parties had rights and obligations. The plaintiff was required to provide goods pursuant to the description set forth in the attached invoice. The extension of warranties from the plaintiff to Expansion did not modify its obligations to CSC (see UCC 2-A-209[2][i]).
Furthermore, the finding that the damages awarded to CSC for the residual value of the machines were neither unforeseeable nor speculative is warranted by the facts.
AUSTIN, J.P., MILLER, WOOTEN and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court