OPINION OF THE COURT
Mollen, J.*
This appeal arises out of breach of contract litigation spanning 18 years and involving the proposed construction and operation of a domed stadium facility in the County of Erie. The issue is whether the plaintiff Kenford Company, Inc. (Kenford) is entitled to recover damages against the defendant County of Erie (County) for the loss of anticipated appreciation in the value of the land which Kenford owned in the periphery of the proposed stadium site. Under the circumstances of this case, we conclude that Kenford is not entitled to recovery on this claim since there is no evidence to support a determination that the parties contemplated, prior to or at *316 the time of the contract, assumption by the County of liability for these damages.
By way of background, the County of Erie adopted enabling legislation in May 1968 authorizing it to finance and construct a domed sports stadium in the vicinity of the City of Buffalo. The County, simultaneously, adopted a resolution authorizing a $50 million bond resolution for the purpose of financing the construction of the proposed stadium. In December 1968, Kenford, through its president and sole shareholder, Edward H. Cottrell, submitted an offer to the County with regard to the stadium project. By its terms, Kenford, which had acquired options on various parcels of land located in the Town of Lancaster in Erie County, proposed to sell a portion of that land to the County as a site for the stadium facility. Although the County initially expressed interest in Kenford’s proposal, it eventually declined the offer. Kenford, however, pursued the matter and thereafter engaged the services of Judge Roy Hofheinz, who had been instrumental in the development of the Houston Astrodome. Kenford then approached the County with a new offer. By its terms, Kenford was to donate to the County the land upon which the stadium was to be built, in exchange for which the County was to permit Hofheinz and Cottrell, who had formed the management company of Dome Stadium, Inc. (DSI), to lease or manage the proposed stadium facility.
In June 1969, the County adopted a resolution accepting Kenford’s new offer, after which the parties engaged in contract negotiations. During this period of time, Cottrell, as agent for Kenford, exercised his options on several parcels of land located in the Town of Lancaster. On August 8, 1969, the County, Kenford and DSI executed a contract which provided, in pertinent part, that Kenford would donate 178 acres of land located in the Town of Lancaster to the County for use in construction of the stadium and necessary access roadways. In consideration therefor, the County agreed to commence construction of the stadium within 12 months. The County also agreed to negotiate a 40-year lease with DSI for the operation of the facility which was to provide, inter alia, that the County would receive, as its consideration, lease revenues of not less than $63.75 million over the 40-year term to be comprised of (1) all tax revenues received by the County generated by the operation of the stadium site area; (2) rental payments from DSI; and (3) increased real property taxes resulting from increased assessments and other tax revenues *317 received from or generated by "the peripheral lands and development thereof’. The term "peripheral lands” was defined as "those lands presently owned, contracted for or hereinafter acquired by Edward H. Cottrell or Kenford, and located within the area of the Town of Lancaster”. If a mutually satisfactory lease could not be agreed upon within three months of the contract signing, the County and DSI were to execute a 20-year management agreement which was annexed to the contract.[1]
Following execution of the contract, the County solicited construction bids for the proposed stadium. The bids received by the County indicated that the proposed project would cost approximately $72 million which was $22 million in excess of the County’s prior bond resolution. Although efforts were made to seek an increase in the appropriation for the stadium, those efforts were unsuccessful and, in January 1971, the County adopted a resolution terminating the contract with Kenford and DSI. Kenford’s subsequent attempts to procure alternate financing for the proposed stadium facility proved futile.
In June 1971, Kenford and DSI instituted the instant breach of contract action and sought specific performance thereof, or, in the alternative, damages in the amount of $90 million.[2] Following the award of summary judgment in favor of the plaintiffs on the issue of liability (see, Kenford Co. v County of Erie, 88 AD2d 758, lv dismissed 58 NY2d 689), the matter was set down for a trial on the issue of damages. The damage trial lasted approximately nine months and resulted in a jury award to Kenford in the sum of $18 million for its lost appreciation in the value on its property located on the periphery of the proposed stadium site and an award of over $6 million in out-of-pocket expenses. DSI was awarded $25.6 million in lost profits under the parties’ 20-year management contract.
On appeal, the Appellate Division, while affirming the major portion of the $6 million jury award for Kenford’s mitigation and reliance damages, reversed the award to DSI for loss of profits as well as a portion of the award to Kenford for out-of-pocket expenses and directed a new trial on the damage *318 award for loss of anticipated appreciation in the value of Kenford’s peripheral lands (108 AD2d 132). On this latter point, the majority of the Appellate Division determined that Kenford’s loss of land appreciation was both a foreseeable and certain damage for which it was entitled to recover. The majority, however, found that the award was based upon improper appraisal evidence provided by the Kenford’s expert who assumed that the property in question would be improved with, among other things, a theme park, office buildings and a golf course. The court ruled that the proper measure of damage was the value of the land as raw acreage following the construction of the proposed stadium less the value of the land when purchased (108 AD2d 132, 139, supra). Two Justices dissented on the issue of Kenford’s right to recover damages for anticipated land appreciation and took the position that these damages were not foreseeable and, in any event, were inherently speculative and, therefore, not recoverable.
DSI subsequently sought review of the Appellate Division’s dismissed of its breach of contract claim against the County. This court, addressing itself solely to the denial of DSI’s right to recover its loss of profits under the 20-year management contract, affirmed that portion of the Appellate Division’s decision. Therein, we determined that those damages were not recoverable on the twofold basis that the County’s liability for DSI’s loss of profits was not in the contemplation of the parties at the time of the execution of the contract and, secondly, the damages were too speculative and, thus, did not satisfy the legal requirements of proof with reasonable certainty (67 NY2d 257).
Thereafter, in accordance with the prior Appellate Division decision, the retrial on the issue of damages for Kenford’s loss of anticipated land appreciation ensued and the jury awarded Kenford the sum of $6.5 million. The Appellate Division affirmed the jury award, although two Justices concurred with the result solely on the basis that that court’s prior decision regarding the recoverability of these damages constituted law of the case (138 AD2d 946). The County has appealed the Appellate Division’s affirmance of the jury award in favor of Kenford. The appeal from the Appellate Division’s 1988 order brings up for review so much of that court’s prior nonfinal 1985 order as determined that Kenford was entitled to recover damages for lost anticipated appreciation in the value of its peripheral lands, since the 1985 order necessarily affected the *319 consequent final determination (see, Cohen and Karger, Powers of the New York Court of Appeals § 79, at 345 [rev ed]).[3]
It is well established that in actions for breach of contract, the nonbreaching party may recover general damages which are the natural and probable consequence of the breach. "[I]n order to impose on the defaulting party a further liability than for damages [which] naturally and directly [flow from the breach], i.e., in the ordinary course of things, arising from a breach of contract, such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting” (Chapman v Fargo, 223 NY 32, 36; see also, Czarnikow-Rionda Co. v Federal Sugar Ref. Co., 255 NY 33; Kerr S. S. Co. v Radio Corp., 245 NY 284; Booth v Spuyten Duyvil Rolling Mill Co., 60 NY 487; Baldwin v United States Tel. Co., 45 NY 744; Leonard v New York, Albany & Buffalo Elec. Magnetic Tel. Co., 41 NY 544; Hadley v Baxendale, 9 Exch 341, 156 Eng Rep 145; McCormick, Damages § 138, at 562). In determining the reasonable contemplation of the parties, the nature, purpose and particular circumstances of the contract known by the parties should be considered (see, Mortimer v Otto, 206 NY 89, 91; 36 NY Jur 2d, Damages, § 40), as well as "what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made” (Globe Ref. Co. v Landa Cotton Oil Co., 190 US 540, 544 [Holmes, J.]; see also, Kenford Co. v County of Erie, 67 NY2d 257, 262, supra).
In the case before us, it is beyond dispute that at the time the contract was executed, all parties thereto harbored an expectation and anticipation that the proposed domed stadium facility would bring about an economic boom in the County and would result in increased land values and increased property taxes. This expectation is evidenced by the terms of the provision of the parties’ contract requiring the County and DSI to undertake negotiations of a lease which would provide for specified revenues to be derived from, inter alia, the increased taxes on the peripheral lands. We cannot conclude, however, that this hope or expectation of increased property values and taxes necessarily or logically leads to the conclusion that the parties contemplated that the County would *320 assume liability for Kenford’s loss of anticipated appreciation in the value of its peripheral lands if the stadium were not built. On this point, our decision in the prior appeal regarding DSI’s right to recover damages for lost profits under the 20-year management contract is particularly instructive: "Initially, the proof does not satisfy the requirement that liability for loss of profits over a 20-year period was in the contemplation of the parties at the time of the execution of the basic contract or at the time of its breach (see, Chapman v Fargo, 223 NY 32; 36 NY Jur 2d, Damages, §§39, 40, at 66-70). Indeed, the provisions in the contract providing remedy for a default do not suggest or provide for such a heavy responsibility on the part of the County. In the absence of any provision for such an eventuality, the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject. The evidence here fails to demonstrate that liability for loss of profits over the length of the contract would have been in the contemplation of the parties at the relevant time” (67 NY2d 257, 262, supra [emphasis added]).
Similarly, there is no provision in the contract between Kenford and the County, nor is there any evidence in the record to demonstrate that the parties, at any relevant time, reasonably contemplated or would have contemplated that the County was undertaking a contractual responsibility for the lack of appreciation in the value of Kenford’s peripheral lands in the event the stadium was not built. This conclusion is buttressed by the fact that Kenford was under no contractual obligation to the County to acquire or maintain ownership of any land surrounding the 178 acres it was required to donate to the County. Although the County was aware that Kenford had acquired and intended to further acquire peripheral lands, this knowledge, in. and of itself, is insufficient, as a matter of law, to impose liability on the County for the loss of anticipated appreciation in the value of those lands since the County never contemplated at the time of the contract’s execution that it assumed legal responsibility for these damages upon a breach of the contract. As this court noted in Booth v Spuyten Duyvil Rolling Mill Co. (60 NY 487, 494, supra) "bare notice of special consequences which might result from a breach of contract, unless under such circumstances as to imply that it formed the basis of the agreement, would not be sufficient [to impose liability for special damages]” (see also, Czarnikow-Rionda Co. v Federal Sugar Ref. Co., 255 NY 33, supra [the defendant supplier of sugar was not made aware at *321 the time of the contract that the plaintiff purchaser could not acquire sugar on the open market and, therefore, was not liable for the plaintiff’s special damages arising out of the breach of contract]; Baldwin v United States Tel. Co., 45 NY 744, supra [the defendant telegraph company was not liable for special damages caused by delay in delivery of message since it was without notice or information indicating that extraordinary care or speed of delivery was necessary]; Hadley v Baxendale, 9 Exch 341, 156 Eng Rep 145, supra [the common carrier was not liable for the loss of profits at the plaintiffs’ flour mill since the carrier, who knew that the mill was closed, was not aware that the mill’s continued operation was dependent solely on prompt delivery of the mill’s broken shaft]).
Undoubtedly, Kenford purchased the peripheral lands in question with the hope of benefiting from the expected appreciation in the value of those lands once the stadium was completed and became operational. In doing so, Kenford voluntarily and knowingly assumed the risk that, if the stadium were not built, its expectations of financial gain would be unrealized. There is no indication that either Kenford or the County reasonably contemplated at the time of the contract that this risk was assumed, either wholly or partially, by the County. To hold otherwise would lead to the irrational conclusion that the County, in addition to promising to build the domed stadium, provided a guarantee that if for any reason the stadium were not built, Kenford would still receive all the hoped for financial benefits from the peripheral lands it anticipated to receive upon the completion of the stadium. According to Kenford’s version of the facts, Kenford was to realize all of its anticipated gains with or without the stadium. Clearly, such a result is illogical and without any basis whatsoever in the record.
Thus, the constant refrain which flows throughout the legion of breach of contract cases dating back to the leading case of Hadley v Baxendale (9 Exch 341, 156 Eng Rep 145, supra) provides that damages which may be recovered by a party for breach of contract are restricted to those damages which were reasonably foreseen or contemplated by the parties during their negotiations or at the time the contract was executed. The evident purpose of this well-accepted principle of contract law is to limit the liability for unassumed risks of one entering into a contract and, thus, diminish the risk of business enterprise (see, McCormick, Damages § 138, at 566- *322 567, supra). In the case before us, although Kenford obviously anticipated and expected that it would reap financial benefits from an anticipated dramatic increase in the value of its peripheral lands upon the completion of the proposed domed stadium facility, these expectations did not ripen or translate into cognizable breach of contract damages since there is no indication whatsoever that the County reasonably contemplated at any relevant time that it was to assume liability for Kenford’s unfulfilled land appreciation expectations in the event that the stadium was not built. Thus, under the principles set forth in Hadley v Baxendale (supra) and its progeny of cases in this State (see, e.g., Kenford Co. v County of Erie, 67 NY2d 257, supra; Czarnikow-Rionda Co. v Federal Sugar Ref. Co., 255 NY 33, supra; Kerr S. S. Co. v Radio Corp., 245 NY 284, supra; Chapman v Fargo, 223 NY 32, supra), Kenford is not entitled to recovery, as a matter of law, for its lost appreciation in the value of its peripheral lands caused by the County’s breach of the parties’ contract.
Accordingly, the March 4, 1988 order of the Appellate Division insofar as appealed from and the April 12, 1985 order of the same court insofar as brought up for review should be reversed, with costs, and the award for loss of anticipated profits from appreciation in the value of peripheral lands stricken.
Chief Judge Wachtler and Judges Alexander, Titone and Bellacosa concur; Judges Simons, Kaye and Hancock, Jr., taking no part.
March 4, 1988 order of the Appellate Division insofar as appealed from and April 12, 1985 order of the same court insofar as brought up for review, reversed, etc.

 Designated pursuant to NY Constitution, article VI, § 2.

. Despite extensive negotiations, the County and DSI never agreed upon a satisfactory 40-year lease agreement.

. The plaintiffs were later granted permission to increase the ad damnum clause to $495 million (see, Kenford Co. v County of Erie, 93 AD2d 998).

. Other orders sought to be reviewed are not reviewable on this CPLR 5601 (d) appeal (see, Gilroy v American Broadcasting Co., 46 NY2d 580).