**LAVA TRADING INC., Plaintiff,**

v.

**HARTFORD FIRE INSURANCE COMPANY, Defendant.**

No. 03 Civ. 7037(PKC).

United States District Court, S.D. New York.

March 18, 2004.

---

Finley Harkham, Jeremy J. Flanagan, Anderson, Kill, Olick & Oshinsky P.C., New York City, for Lava Trading, Inc.

Elizabeth R. Leong, Robinson & Cole, LLP, New york City, Rebecca Levy-Sachs, Robinson & Cole, L.L.P., Sarasota, FL, Rhonda J. Tobin, Stephen E. Goldman, Wystan M. Ackerman, Robinson & Cole, LLP, Hartford, CT, for Hartford Fire Ins. Co.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

This action arises out of an insurance coverage dispute between plaintiff Lava Trading Inc. ("Lava") and defendant Hartford Fire Insurance Company ("Hartford") stemming from damage to plaintiff's offices in One World Trade Center as a result of the terrorist attack of September 11, 2001. Lava seeks a declaratory judgment based on certain policy provisions, and seeks to recover damages for breach of contract, violations of the New York State General Business Law, and consequential damages as a result of defendant's alleged breach. Defendant has moved to dismiss plaintiff's claim for consequential damages, as well as its claim under General Business Law § 349, pursuant to Rule 12(b)(6), Fed.R.Civ.P. For the reasons stated herein, I grant defendant's motion to dismiss plaintiff's Section 349 claim, and deny defendant's motion to dismiss plaintiff's claim for consequential damages.

### Background

Unless otherwise noted, the following facts are based on the allegations in the Complaint or on the terms of the Policy, which is annexed to the Complaint as Exhibit A.

Lava is a technical service bureau for connectivity to all major U.S. equity market liquidity sources. Prior to September 11, 2001, Lava maintained a 75,000 square foot facility on the 83rd floor of One World Trade Center. Those facilities were destroyed completely in the terrorist attack of September 11, 2001. Lava also maintained a back-up location at 75 Broad Street consisting of 3,000 square feet of office space.

Following the September 11 attack, Lava partially resumed its operations by converting its backup facility into a functioning data center. It also secured temporary office space at another location. Lava occupied its temporary location, which became operational on October 11, 2001, for approximately six months. Lava alleges that, as a result of Hartford's failure to pay funds owing under the policy, at the end of 2001, it had "cash assets equal to only a few days of operating expenses, or approximately $85,000." Complaint ¶ 41. In December 2001, it signed a lease

for office space at its present space (95 Morton Street). Lava alleges that, also as a result of Hartford's breach of contract, it "was forced to obtain funding [in March 2002] to continue its operations, obtain suitable office space, and build a necessary back up location." *Id.* ¶ 42. Lava moved into new permanent office space in April 2002. *Id.* ¶ 44. Lava's business was not fully restored until a new back-up facility was completed in October 2002. *Id.* ¶ 45.

Lava is the holder of business insurance coverage under a policy (the "Business Insurance Policy" or "Policy") written by defendant Hartford. The Business Insurance Policy covers the period January 12, 2001 through January 12, 2002. It provides coverage for physical loss or damage to Lava's property, the loss of business income caused by a suspension of operations in the wake of physical loss or damage to its property, and certain extra expenses incurred as a result of such a suspension. As part of its coverage, the Business Insurance Policy provides that Hartford would pay Lava the "actual loss of Business Income" suffered by Lava as a result of a suspension of its "operations". Under the Business Insurance Policy, "Business Income" is defined as "(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (2) Continuing normal operating expenses incurred, including payroll." Policy at LAV 00028.

The Business Insurance Policy also provides coverage for "Extended Business Income" for a limited period. This coverage pays:

"the actual loss of Business Income you incur during the period that:

    (1) Begins on the date property is actually repaired, rebuilt or replaced and 'operations' are resumed; and

    (2) Ends on the earlier of:

        (a) The date you could restore your 'operations' with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

        (b) 30 consecutive days after the date determined in (1) above.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss." Policy at LAV 00029.

The Policy also sets forth Lava's duties in the event of a loss, and the procedure to be followed in filing, and responding to, a claim. *See* Policy at LAV 00036, 00037. The Policy's terms contemplates that a period of at least 90 days will pass before Hartford indicates its intentions with respect to a claim. *See id.* The Policy contemplates payment within 90 days (or less) of a covered loss only if the insured has complied with all the terms of the policy and the insured and insurer have reached an agreement as to the amount of the loss or "an appraisal award has been made." *Id.* at LAV 00038.

According to Lava, its failure to fully restore its business in the 13 months following the September 11 attacks, resulted in the company generating approximately $60 million less in profits than it would have generated had the terrorist attack not occurred. I understand this $60 million to be the direct damages claimed by Lava under the Policy. Lava also claims that Hartford's failure to comply with its obligations under the Policy caused Lava to incur certain other costs, specifically, financing costs for alternate funding that would not have been necessary if Hartford had not breached its contract. Complaint ¶ 76. I understand that it is these other costs that Lava seeks to recoup as "conse-

quential damages" for Hartford's breach of the Policy.

**Legal Standards**

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party. *See Kalnit v. Eichler*, 264 F.3d 131, 137–38 (2d Cir.2001). On a motion to dismiss, however, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.) (citations omitted), *cert. denied*, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996). In addition to the facts alleged in the Complaint, I may "consider documents attached thereto and incorporated by reference therein, as well as matters of public record." *Globecon Group, LLC v. Hartford Fire Insurance Co.*, 2003 WL 22144316, at *2 (S.D.N.Y. Sept.17, 2003) (citing *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir.1998) and *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998)).

**Section 349 Claim**

■ To state a claim under New York General Business Law § 349, a plaintiff must allege "(1) acts or practices that are 'consumer-oriented'; (2) that such acts or practices are deceptive or misleading in a material way; and (3) that plaintiff has been injured by reason of those acts." *De-*

*Pasquale v. Allstate Insurance Co.*, 179 F.Supp.2d 51, 58 (E.D.N.Y.) (citing *Gaidon v. Guardian Life Insurance Co. of America*, 94 N.Y.2d 330, 343–44, 704 N.Y.S.2d 177, 182–83, 725 N.E.2d 598, 603–04 (1999); other citations omitted), *aff'd*, 50 Fed. Appx. 475 (2d Cir.2002) (Table).

■ "[P]arties claiming the benefit of the section [349] must, at a threshold, charge conduct that is consumer oriented. The conduct need not be repetitive or recurring but defendant's acts or practices must have a broad impact on consumers at large; '[p]rivate contract disputes unique to the parties . . . would not fall within the ambit of the statute' . . . If a plaintiff meets this threshold, its prima facie case may then be established by proving that defendant is engaging in an act or practice that is deceptive in a material way and that plaintiff has been injured by it." *New York University v. Continental Insurance Co.*, 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 290, 662 N.E.2d 763, 770 (1995) (internal and other citations omitted).

■ While Section 349 does not require plaintiff to allege fraud, and therefore the particularity requirements of Rule 9(b), Fed.R.Civ.P., are not triggered, to state a claim under the provision plaintiff must allege with some specificity the allegedly deceptive acts or practices that form the basis for the claim. Thus, conclusory allegations, even of the existence of a claim settlement policy designed to deceive the public, are not sufficient to state a claim under Section 349 in the absence of factual allegations in support thereof. *See Northwestern Mutual Life Insurance Co. v. Wender*, 940 F.Supp. 62, 65 (S.D.N.Y.1996) (denying § 349 claim where "there are no specific allegations of an impact on consumers at large, or that Plaintiff employed deceptive practices. Conclusory allegations are insufficient to withstand a motion

to dismiss"); *Grand General Store, Inc. v. Royal Indemnity Co.,* 1994 WL 163973, at *4 (S.D.N.Y. Apr.22, 1994); *MaGee v. Paul Revere Life Insurance Co.,* 954 F.Supp. 582, 586 (E.D.N.Y.1997) (allegations that insurer's refusal to pay benefits "is part of a national policy to terminate unprofitable disability insurance policies by denying benefits to insureds ..." inadequate to state a claim under Section 349; "Indeed, any other conclusion would effectively permit a plaintiff to convert almost any garden variety breach of contract cause of action into a violation of section 349"); *Harary v. Allstate Insurance Co.,* 983 F.Supp. 95, 98–99 (E.D.N.Y.1997) (collecting cases considering adequacy of pleading).

"Several courts have considered whether disputes between policy holders and insurance companies concerning the scope of coverage can amount to conduct falling within Section 349. Almost uniformly, those courts have held that such disputes are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." *DePasquale,* 179 F.Supp.2d at 62 (collecting cases). Here, Lava has failed to offer any but conclusory allegations with respect to defendant's allegedly deceptive "consumer oriented" practices. *See* Complaint ¶¶ 56–59, 80–82. Instead, Lava's allegations suggest nothing more than a dispute between private parties. Such allegations are insufficient to state a claim under Section 349:

> "When one properly disregards plaintiff's conclusory assertion that defendant's conduct was consumer-oriented ... plaintiff claims, at most, that defendant breached its obligation to pay him insurance benefits due under the insurance policy ... Although such conflicts are the sort that could potentially arise between any insured and insurer, the specific allegations at issue here are

'unique to the parties' and do not have any 'broader impact on consumers at large.' ... It is well settled that such allegations are insufficient to state a cause of action under GBL § 349." *Allahabi v. The New York Life Insurance Co.,* 1999 WL 126442, *2 (S.D.N.Y. Mar.10, 1999) (Mukasey, J.) (dismissing § 349 claim on 12(b)(6) motion) (internal citations omitted).

Although plaintiff does not allege whether an insurance broker handled the sale of the Policy at issue in this case, as was the case for the policy at issue in *New York University,* plaintiff does allege that it was represented by a "nationally renowned", independently retained, claims adjuster with respect to plaintiff's proof of loss. Complaint ¶¶ 47–49. Plaintiff also alleges that it is owed over $60 million under the Policy. Complaint ¶ 9. Clearly "this was not the 'modest' type of transaction the statute was primarily intended to reach," but rather is "essentially a 'private' contract dispute over policy coverage and the processing of a claim which is unique to these parties, not conduct which affects the consuming public at large." *New York University,* 87 N.Y.2d at 321, 639 N.Y.S.2d at 291, 662 N.E.2d at 771 (citations omitted).

## Consequential Damages Claim

■■■ Although the New York Court of Appeals has not addressed the specific issue of the availability of consequential damages in a case alleging a breach of an insurance policy, the leading New York case on the availability of consequential damages generally in a breach of contract action is *Kenford Co. v. County of Erie,* 73 N.Y.2d 312, 540 N.Y.S.2d 1, 537 N.E.2d 176 (1989). In *Kenford,* the Court of Appeals held that "[i]t is well established that in actions for breach of contract, the non-breaching party may recover ... such un-

usual or extraordinary damages [as] have been brought within the contemplation of the parties as the probable result of a breach at the time or prior to contracting." *Kenford*, 73 N.Y.2d at 319, 540 N.Y.S.2d 1, 537 N.E.2d 176. In order to determine what damages are reasonably contemplated by the parties, "the nature, purpose and particular circumstances of the contract known by the parties should be considered ... as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.' " *Id.* (citations omitted). In the absence of an express contractual provision with respect to the consequential damages sought, *"the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject." Id.* at 320, 540 N.Y.S.2d 1, 537 N.E.2d 176 (citation omitted; emphasis in the original).

Thus, in *Kenford*, which did not involve an alleged breach of an insurance policy, the Court looked to whether there was a "provision in the contract" *or* "any evidence in the record to demonstrate that the parties, at any relevant time, reasonably contemplated or would have contemplated that the [defendant] was undertaking a contractual responsibility" for the consequential damages sought by the plaintiff in that case (i.e., compensation for the lack of appreciation in the value of plaintiff's land in the event a stadium was not built). *Kenford*, 73 N.Y.2d at 320, 540 N.Y.S.2d 1, 537 N.E.2d 176. The Court of Appeals found that consequential damages were unavailable in that case because "the [defendant] never contemplated at the time of the contract's execution that it assumed legal responsibility for these damages upon a breach of the contract." *Id.*

■ Other courts have recognized that consequential damages may be available for breach of an insurance contract, *see, e.g., Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 1991 WL 33412, at *3–4 (S.D.N.Y.1991), but, as with any breach of contract, " 'to recover damages beyond those flowing naturally from the breach, "such ... damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." ' " *Streamline Capital, L.L.C. v. Hartford Casualty Insurance Co.*, 2003 WL 22004888, at *4 (S.D.N.Y. Aug.25, 2003) (quoting *Continental Information Systems Corp. v. Federal Insurance Co.*, 2003 WL 145561, at *4 (S.D.N.Y. Jan.17, 2003); (other citations omitted)). "[U]nless a plaintiff alleges that the specific injury was of a type contemplated by the parties at the time of contracting, a claim for consequential damages should be dismissed." *Streamline*, 2003 WL 22004888, at *5 (citing *Brody Truck Rental, Inc. v. Country Wide Insurance Co.*, 277 A.D.2d 125, 126, 717 N.Y.S.2d 43, 44 (1st Dep't 2000), *appeal dismissed*, 96 N.Y.2d 854, 729 N.Y.S.2d 669, 754 N.E.2d 772 (2001), and *Martin v. Metropolitan Property & Casualty Insurance Co.*, 238 A.D.2d 389, 390, 656 N.Y.S.2d 318, 319 (2d Dep't 1997)).

Plaintiff relies on *Sabbeth Industries Ltd. v. Pennsylvania Lumbermens Mutual Insurance Co.*, 238 A.D.2d 767, 656 N.Y.S.2d 475 (3d Dep't 1997) in support of its claim for consequential damages for defendant's breach of the Business Insurance Policy at issue in this case. In *Sabbeth*, the Appellate Division, Third Department, reversed that part of the trial court's ruling that denied the plaintiff leave to amend its complaint to include a claim for consequential damages, concluding that in light of the "specific protection [business interruption] coverage provides ... conse-

quential damages were reasonably foreseeable and within the contemplation of the parties." 238 A.D.2d at 769, 656 N.Y.S.2d at 477. I need not decide on this motion whether the Third Department's view that the very nature of a business interruption policy can support a claim for consequential damages would be adopted by the New York Court of Appeals. Here, in contrast to the allegations in the *Streamline* case, plaintiff has alleged that consequential damages were in fact within the contemplation of the parties (Complaint ¶ 18), which allegation I accept for the purposes of this motion. Thus, this case is very different from *Streamline* in this respect.

It is true that Lava's Policy does not contain a specific provision or language permitting the recovery of consequential damages. I do not read the Appellate Division cases cited in defendant's papers, which appear to apply the rule as set forth in *Kenford*, as setting forth any such requirement. *See, e.g., Brody Truck Rental,* 277 A.D.2d at 126, 717 N.Y.S.2d 43 (granting insurer's summary judgment motion where liability policy at issue "contains no provision or language indicating that recovery of consequential damages was within the contemplation of the parties ... *and* no factual issue has been otherwise raised as to whether the parties intended that [the insured] would be able to recover damages due to lost business and/or profits") (citations omitted; emphasis added); *Martin,* 238 A.D.2d at 390, 656 N.Y.S.2d 318 (granting motion to dismiss claim for consequential damages arising out of breach of "loss of use" provision of property insurance policy where "it was neither foreseeable nor within the contemplation of the parties at the time of the contract that failure to pay loss of use benefits would result in foreclosure and the consequential damages flowing therefrom. *Nor* does the contract of insurance contain any language which permits recovery for con-

sequential damages.") (emphasis added). *Sabbeth* is a later Third Department decision than *Sweazey v. Merchants Mutual Insurance Co.,* 169 A.D.2d 43, 45, 571 N.Y.S.2d 131, 132 (3d Dep't 1991), and I must assume that *Sabbeth* better reflects how the Third Department would rule on the issue. Similarly, *Martin* is a later Second Department decision than *High Fashion Hair Cutters v. Commercial Union Insurance Co.,* 145 A.D.2d 465, 535 N.Y.S.2d 425 (2d Dep't 1988), and is presumably an accurate statement of that Court's view. Without further guidance from the New York Court of Appeals or the Appellate Divisions, I would apply *Kenford* to contracts of insurance such as that at issue in this case.

The Policy at issue in this case does expressly exclude "any other consequential loss" from its Business Income and Extra Expense coverage. *See* Policy at LAV 00034. Not surprisingly, the parties have differing views as to the significance of this provision. Lava argues that the policy excludes only "certain consequential losses". However, the unambiguous language excludes "*any* other consequential loss" (emphasis added). Lava also argues that the term "consequential loss" is not coextensive with "consequential damages", or at the very least, is ambiguous. To suggest that the terms, themselves, have different meanings is to stretch the meaning of "loss" and "damages" beyond their natural meaning. Indeed, courts routinely make no distinction between the two. *See Mu Chapter of the Sigma Pi Fraternity of the United States, Inc. v. Northeast Construction Services Inc.,* 273 A.D.2d 579, 581, 709 N.Y.S.2d 677, 679 (3rd Dep't 2000) (finding "consequential damages ... precluded under the terms of the contract" where construction contract provided that "[o]wner waives all rights of action against the [c]ontractor for loss of use of the

[o]wner's property, including consequential losses due to fire ... however caused.") (alterations in original), *appeal denied sub nom., CNA Insurance Companies v. Northeast Construction Services,* 95 N.Y.2d 768, 744 N.E.2d 141, 721 N.Y.S.2d 605 (2000) (Table); *Aetna Casualty & Surety Co. v. General Time Corp.,* 704 F.2d 80 (2d Cir.1983) (where policy provided for recovery of "all direct and consequential loss" from property damage, insured could recover loss profits resulting from physical injury to property); *ECDC Environmental, L.C. v. New York Marine and General Insurance Co.,* 1999 WL 777883 (S.D.N.Y. Sept.29, 1999) (policy covering "any consequential loss or damage" from accidents covers consequential damages including loss profits).

■ However, a policy exclusion speaks only to what constitutes a covered loss under a policy of insurance, and not to what remedies are available for breach of a policy. The scope of a policy's coverage and the damages that are recoverable if the insurer breaches the policy are, of course, distinct concepts. Payment to an insured for a covered and non-excluded loss is performance under the contract of insurance. Breach of the contract of insurance is an entirely different matter governed by the present day successors to *Hadley v. Baxendale,* 9 Exch. 341, 156 E.R. 145 (1854) such as the *Kenford* case discussed above. *See Pape v. Home Insurance Co.,* 139 F.2d 231 (2d Cir.1943); *Acquista v. New York Life Insurance Co.,* 285 A.D.2d 73, 81, 730 N.Y.S.2d 272, 278 (1st Dep't 2001) (" 'Although the policy limits define the amount for which the insurer may be held responsible in performing the contract, they do not define the amount for which it may be liable upon a breach.' ") (quoting and adopting the reasoning of *Beck v. Farmers Insurance Exchange,* 701 P.2d 795, 801 (Utah 1985)); *accord Lawton*

*v. Great Southwest Fire Insurance Co.,* 118 N.H. 607, 611, 392 A.2d 576 (1978) (collecting cases for the proposition that "[t]he policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach"). The policy language may have a direct bearing, but will not always be controlling, on the damages that were within the contemplation of the parties at the time of a contract.

Thus, even if a policy exclusion such as that excluding "any other consequential losses" in this case does not speak to what damages may be recovered, the existence of such a provision in the Policy in this case may be relevant to the inquiry of whether consequential damages are available. As noted, whether consequential damages are available in a given case depends, in part, on the intent of the parties, that is, whether such damages were reasonably foreseeable and in the contemplation of the parties at the time of contracting. Defendant argues that even if this exclusion does not in itself preclude recovery of consequential damages, it reflects the parties' intention that consequential damages were not contemplated. The Fourth Department of the Appellate Division appears to agree with this position. *See J.R. Adirondack Enterprises, Inc. v. Hartford Casualty Insurance Co.,* 292 A.D.2d 771, 739 N.Y.S.2d 795 (4th Dept' 2002) (exclusion for "any other consequential loss" in insurance policy precludes claim for consequential damages for breach of that policy); *Crawford Furniture Mfg. Corp. v. Pennsylvania Lumbermens Mutual Insurance Co.,* 244 A.D.2d 881, 688 N.Y.S.2d 122 (4th Dep't 1997) (same). Of course, the opposite conclusion can also be drawn: that by specifically addressing consequential losses and then expressly excluding them from policy coverage, consequential damages were a type of injury that the parties recognized might

arise. Or, it may be that the policy provision does not speak at all to what damages might arise by virtue of the insurer's breach of the Policy.

Assume a hypothetical policy allowed recovery for consequential losses up to $50,000. Would that mean that the parties contemplated that, in the event of a breach, there could be consequential damage but that they would be unlikely to exceed $50,000, or would that indicate precisely the opposite, i.e., that consequential damages exceeding $50,000 would be likely but that, in agreeing upon a premium in exchange for policy coverage, the parties were excluding them from policy coverage? Or would some other interpretation be the most plausible? Just as the policy language would be inconclusive in the foregoing example, so, too, do I conclude, in the context of this motion to dismiss, that the consequential loss exclusion at issue in this case is inconclusive.

The ultimate question remains: what damages were in the reasonable contemplation of the parties in the event of breach by the insurer at the time they entered into the contract of insurance? In this case, Lava has alleged that "[t]he parties understood ... that a breach by Hartford of its obligation to pay business income and/or extra expense losses under the Business Insurance Policy would likely cause Lava to suffer further loss of income and/or extra expense." Complaint ¶ 18. While it remains to be proven whether this is indeed true, and whether the parties contemplated that the type of consequential damages alleged to be available here would be the likely result of a breach by Hartford, as well as whether Lava even suffered any losses attributable to Hartford's alleged breach, for the purposes of this motion pursuant to Rule 12(b)(6), I must take plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor. In the absence of Policy language (which is incorporated into the Complaint) that negates, as a matter of law, that consequential damages were contemplated, the allegation suffices for purposes of this motion to dismiss. Therefore, I decline to dismiss plaintiff's claim for consequential damages at this stage of the litigation.

### Conclusion

Defendant's motion to dismiss plaintiff's claim under New York General Business Law Section 349 is GRANTED. Defendant's motion to dismiss plaintiff's claim for consequential damages is DENIED.

SO ORDERED.