HOLD BROTHERS, INC., Cross River Management Corp., Holdsoftware.com, and Hold Brothers On–Line Investment Services, Inc., Plaintiffs,

v.

HARTFORD CASUALTY INSURANCE CO. and Hartford Insurance Co. of the Midwest, Defendants.

No. 04 Civ.7223(SAS).

United States District Court, S.D. New York.

Jan. 27, 2005.

10. With respect to Defendants' other arguments, the Court has considered them but finds they lack merit.

Finley Harckham, Jeremy J. Flanagan, John G. Nevius, Anderson Kill & Olick, P.C., New York, NY, for Plaintiffs.

Stephen E. Goldman, Gerald P. Dwyer, Jr., Wystan M. Ackerman, Robinson & Cole LLP, Hartford, CT, for Defendants.

### *OPINION AND ORDER*

SCHEINDLIN, District Judge.

## I. INTRODUCTION

This action stems from an insurance coverage dispute between plaintiffs Hold Brothers, Inc., Cross River Management Corporation, Holdsoftware.com, and Hold Brothers On–Line Investment Services, Inc. (collectively, "Hold Brothers"), and defendants Hartford Casualty Insurance Company and Hartford Insurance Company of the Midwest (collectively, "Hartford") in the aftermath of the terrorist attack on the World Trade Center on September 11, 2001. Hold Brothers alleges breach of contract in connection with Hartford's failure to make payments on three insurance policies [1] covering Hold Brothers for property damage and loss of business income. Hartford now moves to dismiss Hold Brothers' claims for consequential damages and attorneys' fees. For the fol-

---

**1.** *See* Hartford Business Insurance Policies Numbers 13 SBA KY2077 SB, 13 SBA KY2078 SB, and 13 SBA KY2079 SB (the "Policies"), Exs. 1–3 to Complaint ("Compl.").

lowing reasons, Hartford's motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

### A. The Parties

Plaintiffs Hold Brothers, Inc., and Holdsoftware.com are Delaware corporations with their principal place of business in New Jersey.[2] Plaintiff Cross River Management Corporation, Inc., is a New Jersey corporation with its principal place of business also in New Jersey.[3] Plaintiff Hold Brothers On–Line Investment Services, LLC, is incorporated under the laws of Delaware with its principal place of business in New Jersey.[4] Defendants Hartford Casualty Insurance Company and Hartford Insurance Company of the Midwest are Indiana corporations with their principal place of business in Connecticut.[5] The Court's subject-matter jurisdiction is based on diversity of citizenship[6] as well as federal question jurisdiction under the Air Transportation Safety and System Stabilization Act.[7]

### B. The Facts

Hold Brothers alleges the following facts. Hold Brothers is in the securities trading, software development and facilities management business.[8] In early 2001,

Hold Brothers leased office space in the World Trade Center and had nearly completed construction of its office there at the cost of approximately $1 million when the terrorist attack occurred on September 11, 2001.[9] That attack completely destroyed Hold Brothers' office.[10]

Hold Brothers held business insurance coverage under the Policies, which were written by Hartford, for the period of December 31, 2000, through December 31, 2001.[11] The Policies covered, among other things, physical damage to property, loss of business income due to a suspension of operations caused by such damage, and extra expenses incurred as a result of such a suspension.[12]

Specifically, the Policies require Hartford to pay "for the actual loss of Business Income" sustained by Hold Brothers "due to the necessary suspension of [Hold Brothers'] 'operations' during the 'period of restoration.'"[13] The Policies define "Business Income" as "(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (2) Continuing normal operating expenses incurred, including payroll."[14] The "period of restoration" is defined as "the period of time that: (a) Begins with the date of direct physical loss or damage caused by or resulting from any Covered

---

2. *See* Compl. ¶ 9.

3. *See id.*

4. *See id.*

5. *See id.* ¶¶ 10–11.

6. *See* 28 U.S.C. § 1332.

7. *See* Publ. L. No. 107–42, § 408(b)(3), 115 Stat. 230, 241 (2001). While the Air Transportation Safety and System Stabilization Act confers on the United States District Court for the Southern District of New York exclusive subject-matter jurisdiction over actions brought for claims arising from the September 11 attack, state substantive law controls

unless preempted by federal law. *See id.* § 408(b)(2).

8. *See* Compl. ¶ 2.

9. *See id.* ¶ 3.

10. *See id.* ¶ 2.

11. *See id.* ¶ 1.

12. *See id.* ¶ 16.

13. Policies, Special Property Coverage Form § A.5.k.

14. *Id.*

Cause of Loss at the described premises, and (b) Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality."[15] However, "[Hartford] will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage."[16]

In addition, the Policies provide that Hartford will pay the "necessary Extra Expense [Hold Brothers] incur[s] during the 'period of restoration' that [Hold Brothers] would not have incurred if there had been no direct physical loss or damage to property at the described premises."[17] Under the Policies, "Extra Expense" means expense incurred:

(1) To avoid or minimize the suspension of business and to continue 'operations':

(a) At the described premises; or

(b) At replacement premises or at temporary locations, including:

(i) Relocation expenses; and

(ii) Cost to equip and operate the replacement or temporary location.

(2) To minimize the suspension of business if you cannot continue 'operations'.

(3) (a) To repair or replace any property; or

(b) To research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under the Additional Coverage or Additional Coverage k., Business Income.[18]

As with the coverage of loss of Business Income, the Policies provide that Hartford "will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage."[19]

Finally, the Policies provide up to an additional thirty days of "Extended Business Income" coverage under the following terms:

[Hartford] will pay for the actual loss of Business Income you incur during the period that:

(1) Begins on the date property is actually repaired, rebuilt or replaced and 'operations' are resumed; and

(2) Ends on the earlier of:

(a) The date you could restore your 'operations' with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or

(b) 30 consecutive days after the date determined in (1) above.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.[20]

The Policies also detail Hold Brothers' duties in the event of loss, which include the obligation to submit a "signed, sworn statement of loss containing the information [Hartford] request[s] to investigate the claim" within sixty days of Hartford's request for such information.[21] In turn, Hartford committed to give Hold Brothers notice of its intentions within thirty days of receiving the sworn statement of loss.[22] Hartford agreed to pay within that thirty-day period only if Hold Brothers has complied with all the terms of the Policies and the parties have reached an agreement

15. *Id.* § G.4.

16. *Id.* § A.5.k.

17. *Id.* § A.5.l.

18. *Id.*

19. *Id.*

20. *Id.* § A.5.n.

21. *Id.* § E.3.h.

22. *See id.* § E.6.b.

concerning the amount of loss or "an appraisal award has been made." [23]

After the attack on the World Trade Center, Hold Brothers retained an insurance adjustment company, National Fire Adjustment Company, Inc., to prepare and present Hold Brothers' claim to Hartford.[24] In the meantime, Hold Brothers opened a facility at 50 Broad Street in New York City. Hartford delayed its coverage determination and ultimately refused to pay Hold Brothers any money for the interruption of its business.[25] Hartford did offer Hold Brothers approximately $225,000, which included payment for damage to property and computer equipment; this amount is far less, however, than the total covered loss.[26] As a consequence of Hartford's alleged breach of its obligations under the Policies, Hold Brothers lost business as well as market share to its competitors and incurred increased costs.[27]

## III. LEGAL STANDARD

"Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " [28] Thus, a plaintiff need only plead " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [29] Simply put, "Rule 8 pleading is extremely permissive." [30]

"The fundamental issue at the dismissal stage 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " [31] The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." [32]

When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.[33] The court may not consider matters outside the pleadings, but may consider documents attached to the pleadings, documents referenced in the

---

23. *Id.* § E.6.g.

24. *See* Compl. ¶ 30.

25. *See id.* ¶¶ 5, 39.

26. *See id.* ¶ 34.

27. *See id.* ¶ 51.

28. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Although the substantive law of New York governs the claims at issue here, federal procedural law applies. *See Pelman v. McDonald's Corp.*, No. 03–9010, 2005 WL 147142, at *2 (2d Cir. Jan.25, 2005) (holding that "bare-bones notice-pleading requirements" of Rule 8 apply to motion to dismiss

plaintiff's claim under New York General Business Law).

29. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)).

30. *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir.2004).

31. *Phelps v. Kapnolas*, 308 F.3d 180, 184–85 (2d Cir.2002) (per curiam) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998)).

32. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir.2004) (quotation marks omitted).

33. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002).

pleadings, or documents that are integral to the pleadings.[34]

## IV. DISCUSSION

### A. Consequential Damages

Hold Brothers seeks consequential damages, including lost business and increased costs, stemming from Hartford's alleged breach of its obligations under the Policies. Hartford counters in its motion to dismiss that New York law does not allow such damages for failure to pay a policyholder's claims and that, furthermore, the Policies expressly exclude recovery of consequential losses. The New York Court of Appeals has not ruled on the specific issue of whether or under what circumstances a policyholder can obtain consequential damages stemming from an insurer's breach of an insurance policy. "Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law."[35]

The holdings of intermediate appellate state courts provide important data points in predicting how the highest court would rule.[36] In its moving papers, Hartford cites two New York Appellate Division cases that support, in Hartford's view, the proposition that, as a matter of law, a policyholder cannot obtain consequential damages resulting from an insurer's breach of

an insurance policy unless a contractual provision specifically authorizes such damages.[37] However, these cases, *High Fashions Hair Cutters v. Commercial Union Ins. Co.* and *Sweazey v. Merchants Mutual Ins. Co.*, are almost entirely devoid of analysis and either predate or ignore *Kenford Co. v. County of Erie*,[38] the leading case in New York on the availability, in general, of consequential damages in breach of contract actions.

In *Kenford*, the Court of Appeals held that in order to impose on the defaulting party damages beyond those that flow naturally and directly from the breach, "such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting."[39] The Court of Appeals continued:

> In determining the reasonable contemplation of the parties, the nature, purpose and particular circumstances of the contract known by the parties should be considered as well as what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.[40]

In the absence of a contract provision regarding the defaulting party's liability for

---

**34.** *See id.*

**35.** *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir.2001) (quotation marks omitted).

**36.** *See id.*

**37.** *See High Fashions Hair Cutters v. Commercial Union Ins. Co.*, 145 A.D.2d 465, 535 N.Y.S.2d 425, 427 (2d Dep't 1988) (holding that "the plaintiff was not entitled to consequential ... damages since the policy did not contain a specific provision permitting recovery for such loss"); *Sweazey v. Merchants Mutual Ins. Co.*, 169 A.D.2d 43, 571 N.Y.S.2d 131, 132 (3d Dep't 1991) (dismiss-

ing plaintiff's claim for consequential damages because the insurance policy "contain[ed] neither provisions nor language which demonstrates that recovery of consequential damages was within the contemplation of the parties").

**38.** 73 N.Y.2d 312, 540 N.Y.S.2d 1, 537 N.E.2d 176 (1989).

**39.** *Id.* at 319, 540 N.Y.S.2d 1, 537 N.E.2d 176.

**40.** *Id.*

the particular consequential damages sought, "the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject."[41]

■ Thus, according to *Kenford*, a contractual term explicitly allowing consequential damages is not a prerequisite for the recovery of such damages. On the contrary, liability for particular consequential damages can be inferred from "the nature, purpose and particular circumstances of the contract."[42] In other words, under New York law, a court may fill in the gap in order to effectuate the intent of the parties.

Were it to adopt the holdings of *High Fashions* and *Sweazey*, the Court of Appeals would, in effect, create a rule for insurance policies with regard to consequential damages different from the rule for all other types of contracts. There is no apparent reason why the Court of Appeals would take such a step. Indeed, adhering closely to the text of *Kenford*, a panel of the Third Department held in *Sabbeth Indus. Ltd. v. Pennsylvania Lumbermens Mutual Ins.*[43] that the lack of an express provision was immaterial in determining an insurer's liability for consequential damages stemming from its breach of an insurance policy.[44] In *Sabbeth*, on which Hold Brothers heavily relies, the plaintiffs maintained business interruption coverage similar to the loss of business income coverage maintained by Hold Brothers.[45] The Third Department found that:

[t]he very purpose of business interruption coverage would make defendant aware that if it breached the policy it would be liable to plaintiffs for damages for the loss of their business as a consequence of its breach or made it possible for plaintiffs reasonably to suppose that defendant assumed such damages when the contract was made.[46]

The court also noted that the plaintiffs had pled that "liability for extraordinary damages was within the contemplation of the parties" and, consequently, concluded that plaintiffs had stated a claim for consequential damages.[47] This holding is far more consonant with *Kenford* than are the holdings of *High Fashions* and *Sweazey* and is, therefore, a better predictor of how the Court of Appeals would rule were it to consider the issue.[48]

---

41. *Id.* at 320, 540 N.Y.S.2d 1, 537 N.E.2d 176 (emphasis and citation omitted).

42. *Id.* at 319, 540 N.Y.S.2d 1, 537 N.E.2d 176.

43. 238 A.D.2d 767, 656 N.Y.S.2d 475 (3d Dep't 1997).

44. *See id.* at 477.

45. *See id.*

46. *Id.*

47. *Id. See also Porter v. Allstate Ins. Co.*, 184 A.D.2d 685, 585 N.Y.S.2d 465, 466 (2d Dep't 1992) (distinguishing *High Fashions* as being limited to a particular set of facts and, without any mention of an express contractual provision, holding that in the present case the "factual allegations ... disclose a cause of action to recover damages for breach of contract and for consequential damages").

48. The other cases cited by Hartford in which the Appellate Division dismisses claims for consequential damages do not support the proposition that absent an express contract provision a policyholder cannot recover consequential damages. *See* Defendants' Memorandum of Law ("Hartford Mem.") at 7–8. In one instance, the court gives no reason for its holding that consequential damages are not available. *See Williams v. Associated Mutual Ins. Co.*, 211 A.D.2d 865, 621 N.Y.S.2d 206, 208 (3d Dep't 1995). In two others, the court rests its holding on the simple conclusion that consequential damages were not within the contemplation of the parties without any further explanation. *See Kanapaska v. Prudential Prop. & Cas. Ins. Co.*, 122 A.D.2d 935, 506 N.Y.S.2d 87, 88 (2d Dep't

Accordingly, in keeping with *Kenford*, New York law requires that in order to recover consequential damages for an insurer's breach of an insurance policy, the policyholder must show only that such damages "were within the contemplation of the parties as the probable result of a breach at the time of· or prior to contracting."[49] In order to satisfy this requirement, the policyholder need not point to an express contract provision or specific language permitting the recovery of consequential damages.

Hartford maintains that, at any rate, the Policies expressly exclude recovery of consequential losses. Thus, Hartford argues that notwithstanding Hold Brothers' allegation that "[t]he parties understood and contemplated that a breach by Hartford of its obligation to pay business income and/or extra expense losses under the Poli-

cies would likely cause Hold Brothers to suffer further loss of income and/or extra expenses,"[50] Hold Brothers fails to state a claim for consequential damages. Specifically, Hartford points to two exclusions in the Policies. *First*, the Policies state that Hartford "will not pay for loss or damage caused by or . resulting from ... Consequential Losses: Delay, loss of use or loss of market."[51] *Second*, under the heading "Business Income and Extra Expense Exclusions," the Policies provide that:

[Hartford] will not pay for:

a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

(1) Delay in rebuilding, repairing or replacing the property or resuming 'operations,' due to interference at the location of the rebuilding, repair

---

1986); *LTS Contractors, Inc. v. Hartford Ins. Co.*, 99 A.D.2d 644, 472 N.Y.S.2d 222, 223 (4th Dep't 1984). Two other cases base their holdings on findings that the insurance policies in question expressly *excluded* recovery for such damages. *See J.R. Adirondack Enter. v. Hartford Cas. Ins. Co.*, 292 A.D.2d 771, 739 N.Y.S.2d 795, 797 (4th Dep't 2002); *Crawford Furniture Mfg. Corp. v. Pennsylvania Lumbermans Mutual Ins. Co.*, 244 A.D.2d 881, 668 N.Y.S.2d 122, 123 (4th Dep't 1997). Finally, two of the cases cited by Hartford implicitly endorse the *opposite* proposition: that an express provision permitting consequential damages is *not* a prerequisite for obtaining such damages. *See Brody Truck Rental, Inc. v. Country Wide Ins. Co.*, 277 A.D.2d 125, 717 N.Y.S.2d 43, 44 (1st Dep't 2000) (dismissing a claim for consequential damages because the contract "contains no provisions or language indicating that recovery of consequential damages was within the contemplation of the parties ... *and no factual issue has been otherwise raised* as to whether the parties intended that [plaintiff] would be able to recover damages due to lost business and/or profits") (emphasis added); *Martin v. Metropolitan Prop. & Cas. Ins. Co.*, 238 A.D.2d 389, 656 N.Y.S.2d 318, 318–19 (2d Dep't 1997) (holding that plaintiff cannot recover consequential damages because they

were not within the contemplation of the parties *'[n]or* does the contract of insurance contain any language which permits recovery for consequential damages")* (emphasis added). *See also Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F.Supp.2d 434, 441 (S.D.N.Y.2004) ("[Plaintiff's p]olicy does not contain a specific provision or language permitting the recovery of consequential damages. I do not read the Appellate Division cases cited in defendant's papers, which appear to apply the rule as set forth in *Kenford*, as setting forth any such requirement."); *but see Streamline Capital v. Hartford Cas. Ins. Co.*, No. 02 Civ. 8123, 2003 WL 22004888, at *6 (S.D.N.Y. Aug. 25, 2003) ("We believe *Sabbeth* is inconsistent with the weight of authority of New York cases, which have focused on the specific language of the contract to find that consequential damages were within the contemplation of the parties at the time of contracting.").

49. *Kenford*, 73 N.Y.2d at 319, 540 N.Y.S.2d 1, 537 N.E.2d 176. .

50. Compl. ¶ 17.

51. Policies, Special Property Coverage Form § B.2.a.

or replacement by strikers or other persons; or

(2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of 'operations,' we will cover such loss that affects your Business Income during the 'period of restoration.'

b. *Any other consequential loss.*[52]

Hartford contends that these provisions excluding coverage for consequential losses preclude Hold Brothers' claim for consequential damages resulting from Hartford's alleged breach of the Policies.[53]

■ Hold Brothers responds that the cited provisions are *coverage* exclusions and have no bearing on the availability of consequential damages resulting from breach.[54] "Under New York law, the initial interpretation of a contract is a matter of law for the court to decide."[55] "Part of this threshold interpretation is the question of whether the terms of the insurance contract are ambiguous."[56] "Where there are alternative, reasonable constructions of a contract, *i.e.*, the contract is ambiguous, the issue should be submitted to the trier

of fact."[57] For the purposes of this motion, it is only necessary to say that the provisions cited by Hartford do not unambiguously exclude the recovery of consequential damages resulting from breach of the Policies. Neither provision makes any reference to losses or damages resulting from breach; on the contrary, both provisions appear in the context of exclusions of coverage for certain kinds of losses. Hold Brothers' construction is, therefore, eminently reasonable.[58] Thus, while the cited policy language may ultimately have a direct bearing on what damages for breach were within the contemplation of the parties at the time of contracting, a question of fact exists as to whether these provisions exclude the recovery of consequential damages.

Having determined that (1) New York law requires that in order to recover consequential damages for breach of an insurance policy, the policyholder must show only that such damages were within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting and (2) the provisions of the Policies. excluding consequential losses do not unambiguously exclude the

52. *Id.* § B.4. (emphasis added).

53. *See* Hartford Mem. at 13; *J.R. Adirondack,* 739 N.Y.S.2d at 797 (dismissing claim for consequential damages because "[t]he insurance policy at issue here expressly excludes coverage for consequential losses"); *Crawford,* 668 N.Y.S.2d at 122–23 (holding that consequential damages are unavailable because "[p]laintiff failed to establish that such damages were reasonably foreseeable or contemplated by the parties when the contract was formed … and, indeed, the contract at issue contains a provision excluding from business interruption coverage 'any other consequential loss' ") (citations omitted).

54. *See* Memorandum of Law in Opposition at 13–15; *see also Lava Trading,* 326 F.Supp.2d at 442 ("The scope of a policy's coverage and the damages that are recoverable if the insur-

er breaches the policy are, of course, distinct concepts.").

55. *K. Bell & Assocs. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir.1996) (quotation marks omitted).

56. *Morgan Stanley Group, Inc. v. New Eng. Ins. Co.,* 225 F.3d 270, 275 (2d Cir.2000).

57. *K. Bell,* 97 F.3d at 637.

58. *See Lava Trading,* 326 F.Supp.2d at 442 (holding that an identical provision "speaks only to what constitutes a covered loss under a policy of insurance, and not to what remedies are available for breach of a policy"); *but see Streamline Capital,* 2003 WL 22004888, at *7 (holding that the same provision precludes consequential damages resulting from breach).

recovery of consequential damages, I conclude that Hold Brothers' claim for consequential damages satisfies the permissive pleading standard of Rule 8. In keeping with this standard, Hold Brothers need not plead specific facts to support its claim; it is more than sufficient at this stage that Hold Brothers has alleged that "[t]he parties understood and contemplated that a breach by Hartford of its obligation to pay business income and/or extra expense losses under the Policies would likely cause Hold Brothers to suffer further loss of income and/or extra expenses."[59] Thus, Hold Brothers has adequately pled a claim for consequential damages.[60]

### B. Attorneys' Fees

■ Hold Brothers also seeks attorneys' fees.[61] The New York Court of Appeals has held that "[i]t is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy."[62] Hold Brothers' claim for attorneys' fees must, therefore, be dismissed.

### V. CONCLUSION

For the foregoing reasons, Hartford's motion is granted in part and denied in part. The motion to dismiss Hold Brothers' claim for consequential damages is denied. The motion to dismiss Hold Brothers' claim for attorneys' fees is granted.

The Clerk of the Court is directed to close this motion (docket # 10). A conference is scheduled for February 4, 2005, at 4:30 p.m. in Courtroom 15C.

SO ORDERED.

---

**59.** Compl. ¶ 17. Hartford argues that Hold Brothers fails to state a claim for consequential damages because the complaint fails to allege that the parties contemplated that Hartford would be *liable* for the specific consequential damages sought. *See* Hartford Mem. at 7. Not only is this argument out of sync with *Swierkiewicz v. Sorema* and the rest of the Supreme Court's and Second Circuit's Rule 8 jurisprudence, but it is also premised on a misreading of *Kenford.* On a motion to dismiss, a court must draw all reasonable inferences in plaintiff's favor. It is reasonable to infer from Hold Brothers' allegations that Hartford assumed liability for losses resulting from a breach of the contract. In any case, as stated earlier, in order to impose liability for consequential damages, the plaintiff must show that such "unusual or extraordinary *damages* ... [were] within the contemplation of the parties as the probable result of a breach." *Kenford,* 73 N.Y.2d at 319, 540 N.Y.S.2d 1, 537 N.E.2d 176 (emphasis added).

**60.** Hartford's contention that the parol evidence rule somehow requires dismissal is off the mark. *See* Hartford Mem. at 15–18. As discussed earlier, the reasonable contemplation of the parties may be inferred from "the nature, purpose and particular circumstances of the contract." *Kenford,* 73 N.Y.2d at 319, 540 N.Y.S.2d 1, 537 N.E.2d 176. In any case, the policy does not unambiguously exclude recovery of consequential damages, and "the parol evidence rule does not bar 'evidence to clarify an ambiguity caused by the absence of particulars from the writing.'" *DeRoche v. Methodist Hosp. of Brooklyn,* 249 A.D.2d 438, 671 N.Y.S.2d 319, 320 (2d Dep't 1998) (citing *Stage Club Corp. v. West Realty Co.,* 212 A.D.2d 458, 622 N.Y.S.2d 948, 950 (1st Dep't 1995)).

**61.** *See* Compl. ¶ 52.

**62.** *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 324, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995).